*133
 
 Henderson, Chief-Justice.
 

 I am sonu ivhat at a loss to say what this Court, as a revising Court, should do , . .... ‘ , . as to the error in bringing the suit. No doubt it was intended to he the infant’s suit — it was so considered throughout. The trial was upon the infant’s title, yet it is the suit of the guardian — it is brought by him in his own name — for although he describes himself as guardian of the infant, that is but matter of description, and does not make it the suit of the infant. The Court below, Í think, should have rejected the whole of the evidence, as irrelevant $ for it did not tend to establish title in the Plaintiff, but in his ward. I do not know what else we can do, hut to grant a new trial. The Superior Court may, under our act for the amendment of the law7, and particularly under our construction of that act, permit an amendment upon terms, if it should he thought proper. '
 

 The Counsel for the Defendant made a very ingenious argument, to show7 that there was no conversion
 
 ;
 
 but lie has not satisfied rne that there was none. It is evident the Defendant claimed a life estate in the horse, under the will of her husband, to which she was entitled, if there was no valid gift to the infant.
 

 The executor left the horse with the other property on the plantation, where the widow continued to reside, and she no doubt exercised acts of control and ownership over it — for it appears that she lent him to one of (he witnesses to go to Fayetteville, and once to another person to go a short journey. That when demanded, she said the horse was not there that he was in the possession of the agent of the executor, who lived three or four miles off. She said she would do nothing until she could see the executor, and that she did not know that she would give up the horse at any rate. This is very unlike the conduct of tlie possessor of a chattel, who, not knowing the owner, claims no property in it, but is willing to give it up, so that he is exonerated. On the contrary, it is very muck
 
 *134
 
 like a claim, especially when coupled with her acts of ownership and her concluding’remark, that she did not know that, she should give him up at any rate, which seems like disclaiming the authority of the executor. All this looks much like a claim for herself, and when coupled with her interest under the will, shows that she held adversely.
 

 The general rule is, that any person who is in the possession of another’s property is bound to surrender it upon demand. The exceptions are, where a person really and
 
 bona fide
 
 does not know that the applicant is the owner. By which, I do not mean that he cannot judge whether his title is good or bad, as it were, upon the law or intricate facts of the case — as if a man finds property, before the finder can be put in the wrong, there must he some grounds to believe that the applicant is tho owner ; not full proof, but something that would satisfy a reasonable man. JgjMfjyjp neighbor bails property to another, if it is demanded of the DaIíeeT"and he, thinking it is the bailor’s, requests a delay until he can see the bailor and return it to him, this will not be evidence of a conversion/All these exceptions are founded in good sense, and it must appear on the transaction that the bailee neither claims possession for himself, nor even for his bailor, but only that he wished a delay to enable him to return it to the bailor, that the latter might exercise his free will, and not condemn the bailee for not doing so, and that the bailee might thus avoid a lawsuit. If this Defendant held for the executor, it appears her motives were different from these. I rather suppose she considered that he held title for her, and that she held possession for herself — that she was mistress, and could direct and act as she pleased; for it seems that when matters came to an extremity, she would follow her own, and not his will. When one is in possession under a bailment, by holding for the bailor, and refusing to deliver the thing hailed upon demand, he identifies his possession with the title of the bailor $ and
 
 *135
 
 if that ir ’ ad, the possession is a ’tivcrsi.sand he be-romes sonally chargeable. ;uink • erefore the Judge was right in the instructions given, and in the manner in which he left the case to the Jury.
 

 As to the demand made by a person who does not show that lie was guardian, or authorised to make it, I perfectly concur with the Counsel, that the Defendant might well refuse to deliver up the horse on such a demand
 
 \
 
 but this should have been done on that ground, and not on the claim of right on her part: it is the claim of right which gives to her possession an adverse character.
 

 I think the Defendant has no pretence to shelter herself under the bailment from the executor. For she identified herself with him, and if his title is bad, her possession is wrongful. But the judgment must be reversed, and a new trial granted for the cause first mentioned.
 

 Per Curiam. — Let the judgment below be reversed, and a new trial granted.