Ruffin, C. J.
 

 The counsel for the defendant has given up the exception taken to the opinion of the court upon the presumption of a gift, to which, indeed, this court sees no objection.
 
 Mitchell
 
 v
 
 Cheeves,
 
 2 Hay. 126.
 
 Dameron
 
 v Clay, 2 Dev. Eq. 17.
 

 As we conceive, his Honor was likewise correct in rejecting the evidence offered of Joshua Harris’ declarations, not made in the presence of the plaintiff. It is a general rule, that a party’s declarations are not evidence for himself, unless madb in the presence of the opposite party, and not contradicted by him. The declarations in themselves prove nothing but that Harris said, he had bailed the negro to the plaintiff; but they cannot establish, that he in fact lent her. It is their not being contradicted, when made to the person interested to deny their truth, that gives weight to them as evidence of the fact declared. The evidence was therefore properly ruled out, upon the grounds both of irrelevancy and incompetency.
 

 The remaining exception of the defendant relates to that part of the instructions, which respects the character of the plaintiff’s possession, after the conversation between him and Harris, as proved by the witness Pemberton. That person stated, that he heard frequent conversations between those parties between the years 1806 and 1812, in which Harris contended that the negroes should go the daughters of his deceased daughter Nancy, the former wife of the plaintiff, and the latter said, that Harris had given them to him and that they were his property, and he would do with them as he pleased. Upon this part of the case the judge instructed the jury, that, if, from all the evidence,, they found that
 
 *219
 
 the negro Matilda had been originally lent and not given, then the plaintiff could not recover, unless he afterwards acquired a title to the slaves : And with a-view to ascertain, whether the plaintiff had, after the original loan, acquired an absolute title, the jury was further instructed, that, if they belived the witness Pemberton, and found that the plaintiff told Harris that the negroes were his own property, and that he, the plaintiff, would do as he pleased with them, then the failure of Harris to sue for the negroes and suffering them to remain in the possession of the plaintiff, more than three years after those declarations of the plaintiff, gave the title to the plaintiff, and he ought to recover.
 

 We have to premise, that, in deciding the point raised by this exception, the court does not look into the evidence at large, with the view of seeing whether, upon the whole of it, a verdict might not or ought not to have been found for the plaintiff. From the very great length of the plaintiff’s possession, accompanied by a frequent claim of title by a gift originally made, and by acts of apparent ownership in dividing the negroes among and giving them to his children, a presumption of such gift, or of any thing else necessary to constitute a good title, might and ought to be deduced, unless opposed by the very clear and consistent proof of an original bailment and of subsequent recognition of it from time to time by the plaintiff. But while we hold such to be 'the law, we likewise think, that, if it be established to the entire satisfaction of the jury, that, in fact, Mr. Harris lent the girl Matilda to the' plaintiff at first, and the effect of the length of possession and other acts of apparent ownership, as presumptive evidence of a gift subsequently made, be repelled by the well established and deliberate acknowledgments of the plaintiff, that he did not hold for himself, but held under and for his father-in-law, or for his own children, to whom his father-in-law gave them; then the plaintiff could not recover from one of his children, or from a person claiming under the child. For no length of possession by a bailee, as such, will bar the right of the bailor; and, if the bailment be admitted during the longest enjoyment, a title in the possessor cannot be presumed from the possession.
 
 Dar-
 
 
 *220
 

 den
 
 v
 
 Allen,
 
 1 Dev. 466.
 
 Palmer
 
 v
 
 Faucett, 2
 
 Dev. 240.
 
 Hill v Hughs,
 
 1 Dev. & Bat. 320. The difficulty, under which the defendant lies, is to give such plain, continued, consistent and uncontradicted evidence of the plaintiff’s acknowledgment of the title of Harris or of his children, as will, in the minds of the jury, overcome the fair and legal •influence of an uninterrupted possession of more than forty ■years.
 

 From the tenor of the instructions to the jury and of the defendant’s exception, we are, however, to consider, that the negro was not at first given, nor at any other time, bnt was, in fact, lent; and, assuming that to be so, his Honor held, upon the testimony of Pemberton, and, as if that was all the evidence in the case, that the plaintiff’s possession for three years, without suit, after he told his bailor that the ne-groes were his own property, and that he would do with them as he pleased, gave the plaintiff the .title to the negroes. The meaning is, that by those declarations the party’s possession became adverse, and was protected by the statute of limitations, and was ripened into the absolute title by the act of 1820, (Rev. Stat. c. 65, s. 18.) Now, from that position, as an isolated point in the case, this court dissents. We do not dispute, that a bailee'may turn his possession into a tortious and adverse one. We have held in
 
 Martin
 
 v
 
 Harden, 2
 
 Dev. & Bat. 504, that a demand of a negro- by the bailor, and a refusal by the bailee, will have that effect. In
 
 Powell
 
 v
 
 Powell,
 
 1 Dev. & Bat. Eq. 379, we held, that, where .slaves were given by parol to one, who died intestate, and, in the division of the donee’s slaves amongst his next of kin, those thus given were allotted in the share of one of the next of kin, and were taken into possession by him as a part of his share, the possession taken in that manner was adverse to the original donor, as to the rest of the world, and put the statute of limitations into operation. We considered that case as tantamount to an absolute purchase from a bailee, and possession taken thereon by the purchaser ; in which case, unquestionably, the possession must be taken to be in the possessor’s own right, and not as subsidiary to the right of the donor, or of any other person. But
 
 *221
 
 in all those cases there is something more than the bare claration of the bailee, that he claims the property and not hold for his bailor. There is a taking a new possession by a purchaser or by the next of kin in
 
 Powell
 
 v
 
 Powell;
 
 and in the other instance, there is a positive refusal to restore the possession which the bailor demanded, and which the bailee was bound to surrender, whereby he gave to the bailor an action immediately to recover the property, which it was the folly of that person not to bring. In this case there is no act of either of those descriptions. It is to be recollected, that all the rest of the evidence is to be put out of view, except that of Pemberton ; because the court laid it down to the jury, that the facts stated by him, if true, with a subsequent possession for three years, entitled the plaintiff to recover. We are therefore to shut out even the long possession, as evidence of an original gift, or of one subsequently, or as evidence of ouster — if we may use the expression — or rather of the adverse character of the plaintiff’s holding. Now it has never been holden, that the naked declaration of a bailee, that he claimed the property in his own right, without any change of the possession and without any demand or wish to resume the possession by the bailor, although such declaration might be public or made even to the bailor himself, would
 
 instantly
 
 terminate the bailment and immediately convert the the possession into an adverse one, so as to set the statute of limitations in motion from the day of such declaration. The contrary we conceive to be settled law. Without adducing from more remote sources authorities in support of our opinion, it is sufficient to say, that in
 
 Collier
 
 v
 
 Poe,
 
 l Dev. Eq. 55, there was a loan of a negro in 1804, the death of the lender in 1807, and open and public annunciations by Poe in the lifetime of Payne of the claim of title by the former, and thereupon a continued, possession under that claim up to 1824 ; and yet the court distinctly said, that there was no pretence for the operation of the statute of limitations, on which the answer insisted, for by his declarations, that he claimed the negroes as his own, the defendant could not throw off his character
 
 *222
 
 as bailee. Again, in Hill v
 
 Hughs,
 
 1 Dev. & Bat. 336, although the bailee not only claimed and used the slave as his 0vvn, but actually conveyed him by a deed of trust as a security for his debts, yet, as the trustee did not take possession, but the bailee kept it as before he made the deed, we were of opinion that the bailment had not been determined, and consequently that the possession did not become adverse upon the execution of the deed. The present case cannot be distinguished from the principle of the two cases cited. It rs precisely that of
 
 Collier
 
 v Poe, except that the claim of title was made in the presence of the donor, while
 
 it does
 
 not appear that it was in
 
 Collier
 
 v
 
 Poe,
 
 although publicly done. But
 
 Hill
 
 v
 
 Hughs
 
 is a stronger case than the present, as there was an actual conveyance by Haynes. But here, according to the testimony of Pemberton, although there was a claim of property by the plaintiff, there was no refusal to surrender the possession to Harris, who, indeed, did not demand it. On the contrary, the witness states merely, that Harris “contended that the negroes should go to the daughters of his deceased daughter,” and not that he demanded them from the plaintiff, or said or did any thing from which it can be inferred, that he meant or wished
 
 then
 
 to deprive the plaintiff of the possession and enjoyment of the negroes he had lent to him. If then the plaintiff held as bailee before, he still held in that character; for there was no effort by the bailor to regain the possession, and no
 
 act
 
 done by the bailee changing the nature of it. Pemberton’s testimony is strong to shew there was a gift originally ; for Harris did not allege the contrary, but only contended that the negroes should go to his grand-daughters, which he might well do, on the idea that the plaintiff got them from him, and ought not to give them to children by another marriage. But the case was not put on that point, but was left to the jury on the hypothesis that it was not a gift, but a loan ; and, thus regarded, the court is of opinion that what passed, as stated by Pemberton, did not amount to a demand and refusal of itself, so as to make the possession adverse. The case must therefore again go before a jury, who can
 
 *223
 
 weigh that evidence in connexion with the long possession, prior and subsequent, and the other circumstances, and the proper weight to the whole, as tending to establish a gift at some time, or to lay a foundation for the presumption of a demand by Harris or the plaintiff’s children and a refusal on his part; and also to the evidence on the part of the defendant, tending to rebut those inferences and establish the continued relation of bailor and bailee between the parties.
 

 The counsel for the plaintiff has, however, insisted, that, ever, if there was error in the point already considered, the judgment should stand, because, as a bailee in possession, he can maintain this action of detinue against a mere wrongdoer, and, therefore, on,the whole case the verdict was right. The general question was argued elaborately; and it may be, that the special property of a bailee will sustain detinue against one, who actually deprives him of the possession without color of right in himself or in him through whom he claims. But we do not propose to discuss the point at present, because we think it does not arise in this case. The defendant claims under a gift in the will of the former owner, the alleged bailor of the plaintiff; and, even if, after so long a time, an assent to the legacy is not to be conclusively presumed, yet the connexion with the property by force of the gift in the will, certainly, we think, prevents the plaintiff’s children from being treated as mere wrong-doers and intermeddlers with effects to which they have no claim_ After the lapse of twenty-five years from the probate of the-will, without any interference by the executors, or suggestion of debts unpaid, it is a fair inference that the executors-meant to leave the contest to be decided between the plaintiff and his children upon the right; that is, to let the question of loan or gift be determined between those parties themselves, and not to interpose in any manner so as to obstruct the decision. We concur, therefore, in the refusal of his Honor to give the instruction prayed for by the plaintiff on this point.
 

 Pbr Curiam. Judgment reversed, and
 
 venire de novó
 
 ordered.