Ruffin, C. J.
 

 The principle of the instruction is, that an executor gets no property in his testator’s goods, and cannot take them, nor sue for them, before getting letters testamentary. ]3ut the Court understands the law to be settled to the contrary. Although, in a case oí intestacy, a person, though entitled to the administration, cannot in termed-.die in the goods, before taking administration, except for special purposes, allowed by Statute, yet the writers on the law ot executors agree in stating, that an executor may, immediately upon the death of the testator, take possession of his effects, and bring suits, though he cannot declare before probate, for the technical reason, that he must make
 
 profert
 
 of his letters. And that position is sustained by ancient and undisputed judicial opinions. In
 
 Graysbrook
 
 v
 
 Fox,
 
 1 Plow. 280, Dyer cites a case, in
 
 which an
 
 executor, before probate, commanded A to take certain goods of the testator out of the possession of B; and afterwards, the executor was allowed to refuse to administer, and administration was granted to B; and he then brought trespass against A for the taking, and it was held, that the justification, by the command of the executor, was good. And he lays it down as clear law, that executors are not called executors, in respect, only, that they actually execute, ' but in respect that they may execute: for, the death of the
 
 *177
 
 testator makes the testament, and, by his death', the property of the goods, which, was in him, is cast upon,-and-vested' in, the executor, who may, therefore, before probate,, take the goods, and dispose of them and he says, further, that-for that reason, if any one take the goods- before the executor seizes them, he shall have trespass or replevin against him, before probate. In
 
 Wankford
 
 v
 
 Wankford,
 
 1 Salk. 381, Lord Holt repeated the same doctrine, that, before probate, an executor may seize the goods., As the plaintiff^ then, might, as the owner of the slave, have had redress, by taking her at any time after the death ol the father, or by biinging suit for her, the adverse possession of the defendant, tor more than three years after the plaintiff’s right- accrued, and action arose, bars him. An argument might, perhaps, have been made against the truth of this position-in our law, founded on the prohibition in the Act of 1715, ch. 10, sec. 4, under a penalty of £50, of any persons entering upon the administration of any deceased person’s estate, until obtaining administration or- letters testamentary. But, whatever influence that provision might pnce have-had, it cannot have now; because, in the revision of 1836,. the legislature, seeing the frequent convenience, and, indeed, the occasional necessity, for the executor’s doing some things before there was time to prove the will, modified the provision, by confining it to the administration of an intestate’s estate, before obtaining letters of administration. Rev. Sjtat. ch. 46, sec. 8. It is true, also, that it is held with- us, that, where two or more executors are appointed, those only,, who qualify, need join in an action as plaintiffs. But that does not affect the rights of ail the executors, until one shall prove the will; and when he does so, then, of course, he is executor by relation from the beginning, to the exclusion of the others,, until-, they, also, qualify. So, there was
 
 *178
 
 nb incapacity iri the plamtiff to assert his title to the slave, and, consequently, he is now barred.
 

 'But it was further contended at the bar, that the defendant’s possession was not adverse, but that, upon the hypothesis in the instruction of the donor’s incapacity, which the verdict affirms, the deed was void, and the' defendant held as bailee, as if the gift had been oral from the parent to the child. Where an oral gift .of a slave is made to a child, it may, or may not, according to an express provision of the Act of 1806, be an advancement, at the election of the parent, at any time during his life, and, therefore, of necessity, the relation between them, during that period, is that of bailor and bailee, unless it be terminated by a demand and refusal, in which last case, the possession of the donee becomes adverse, — that is, he does not, thenceforward, hold for the donor upon his title, but for himself, upon a claim of title in himself. But, when one — whether a child or a stranger, takes possession of goods under a conveyance, which is proper, in form, to pass the title absolutely, it is clear, that his possession is not subsidiary to a title, real or supposed, in the maker of the conveyance, but purports to be the exclusive possession of the party himself, as the owner, and, consequently, it is adverse to the former owner, as to the rest of the world. It is true, the
 
 non compos
 
 donor or vendor is not barred by such a possession. But that is not because of the character of the possession, but of the party’s incapacity. For, admitting the possession to be adverse, the operation of the Statute of Limitations is suspended, while the incapacity exists. In fact, however, it is on a claim of right, and it is adverse, and, therefore, upon the
 
 non compos
 
 becoming' of sound memory, or upon his death, leaving an executor, the time.begins to run, and an action must be brought within the limited time from that event. If it t\>crc not so, there would be no bar from any length
 
 *179
 
 of time, when a vendor, though without the knowledge of the vendee, happened to be under mental infirmity, at the making of the contract.
 

 Per Curiam. Judgment reversed, and
 
 venire de novo.