JAMES R. HERRING and Wife, PATRICIA FAYE HERRING, v. C. B. CREECH and Wife, BESSIE L. CREECH; and VIRGIL A. CREECH and Wife, IVA B. CREECH, Trading and Doing Business as CREECH BROTHERS AUTO AND TRAILER SALES.

(Filed 15 December, 1954.)

**1. Trover and Conversion § 2—**

Proof of surrender of the chattel to the true owner is a complete defense to an action in the nature of a common law action in trover and conversion.

**2. Bailment § 2—**

The bailee is estopped to dispute or deny the bailor's title for the purpose of setting up title in himself.

**3. Bailment § 7—**

Surrender of the property to the true owner by the bailee is a complete defense to an action by the bailor for conversion.  But if such third person is not the true owner, good faith or honest mistake on the part of the bailee in surrendering possession to him is no defense.

**4. Same—**

Where a lienholder is entitled to possession of the personalty by reason of the debtor's default, the lienholder is entitled to possession as against the bailee of the debtor, since a bailee can have no better right than his bailor.

**5. Same—Nonsuit is properly entered in bailor's action for conversion when evidence discloses delivery to lienholder entitled to possession.**

Plaintiffs' evidence was to the effect that they were the owners of property subject to a conditional sale contract, that they delivered the property to defendants for resale, advising defendants of the existence of the lien, that they thereafter demanded possession of the property from defendants and that defendants failed to return same or account for its value. Plaintiffs admitted default in their payments to the lienholder, entitling the lienholder to immediate possession. Defendants' uncontradicted evidence was to the effect that the property was repossessed by the lienholder or his authorized agent. *Held:* The facts, constituting a *prima facie* case, made out by plaintiffs' evidence, are explained and clarified by defendants' undisputed evidence establishing delivery of possession to the lienholder who was then entitled to possession, and nonsuit was properly entered in plaintiffs' action for conversion.

**6. Trial § 22f—**

Defendant's undisputed evidence which explains and clarifies plaintiff's evidence is properly considered on motion to nonsuit.

**7. Trial § 23f—**

Evidence supporting recovery on a theory not alleged in the pleadings cannot preclude nonsuit.

APPEAL by plaintiffs from *Martin, Special J.,* April 1954 Civil Term of NEW HANOVER.

Action by plaintiffs to recover from defendants the reasonable value of a certain ("dark blue 27-foot Zephry Glider Trailer Coach") 1950 used house trailer.

Plaintiffs allege that they, owners of the house trailer, on or about 18 October, 1952, delivered it to defendants as bailees, the terms of bailment being that defendants were authorized, during the period of thirty days from that date, to sell the trailer for $2,400.00 cash; and, if not sold, for its return to plaintiffs, undamaged. Plaintiffs allege that they made demand on defendants for their trailer 22 November, 1952, but defendants have failed to return it to plaintiffs or to account for its value.

While alleging they authorized defendants to sell the trailer for $2,400.00, plaintiffs' action is to recover from defendants $2,600.00, alleged to be the value thereof when demand was made therefor and refused, plus an additional $5,000.00 damages alleged to have been suffered by plaintiffs through their loss of the use of the trailer as their dwelling.

Evidence offered by plaintiffs tends to establish these facts:

1. Plaintiffs, husband and wife, purchased the trailer from Johnson Trailer Sales on or about 27 October, 1951. They executed a $2,100.00 note and conditional sales contract for the deferred portion of the purchase price, payable in 30 equal monthly installments of $70.00 each, payable on the second day of each month, beginning 2 December, 1951, at the office of Michigan National Bank, Grand Rapids, Michigan. The conditional sales contract, security for the $2,100.00 debt, provides that the trailer "shall at all times be and remain personalty and the title to said trailer shall remain vested in the Seller until this contract shall have been fully performed by Buyer." Also: "Any assignee shall be entitled to all of the rights of the Seller." Also: "Time is of the essence of this contract and in the event Buyer defaults on any payment, . . . then the Seller, at his or its option, may elect (1) to declare the entire sum remaining unpaid hereunder immediately due and payable and sue therefor, thereby vesting absolute title in Buyer, or (2) to repossess said trailer without notice, demand or legal process if repossession may be made without breach of the peace, and may enter upon the premises where said trailer may be and remove and hold the same absolutely as the property of Seller . . ." Also: "In case of repossession and sale of said trailer for default in payment of any part of the total time price, all sums paid on account of such price and any sums remaining from the proceeds of the sale of such repossessed trailer, after deducting the reasonable expenses of such repossession and sale, shall be applied in reduction of such price and, if the net proceeds of such sale exceed the balance due on such price, the excess shall be paid to the Buyer." Johnson Trailer Sales executed its bill of sale to plaintiffs, which contained its warranty that the trailer was free and clear of all liens except "Twenty-One Hundred Dollars due Michigan National Bank of Grand Rapids, Michigan."

2. Plaintiffs used the trailer as their dwelling, placing it near a cafe at Wrightsville Beach operated by them until shortly after 18 October, 1952. Desiring to sell the trailer, they put an advertisement in the newspaper and a "For Sale" sign on the trailer. On or about 18 October, 1952, defendants removed the trailer to their place of business under an agreement with plaintiffs by which defendants were authorized to sell the trailer for $2,395.00 and, if sold at that price, defendants would receive a commission of $200.00. Defendants were and are in the business of selling trailers and cars. The *feme* plaintiff testified: "We told him we owed the bank on the trailer, and would have to pay that after we got the money for the trailer." She testified further: "I told him our payment was due on the second of the month, and that the trailer would have to be sold in 30 days, before another payment came up, . . ." The plaintiff

James R. Herring testified: "We told him, me and my wife, the payment was 16 days behind when he came to get the trailer."

3. Before defendants took possession under the foregoing arrangement, plaintiffs had paid to the Michigan National Bank all installments to and including that due 2 September, 1952, but the installment due 2 October, 1952, was then in default, and the installment of 2 November, 1952, became due while the trailer was in the possession of defendants. No installment subsequent to that due 2 September, 1952, was paid or tendered by plaintiffs. The *feme* plaintiff testified: "We were trying to sell the trailer because we were behind on the payments; that was in October."

4. No sale was made. On Saturday, 22 November, 1952, plaintiffs got in touch with defendants to join in negotiations for a possible sale involving a trade-in of furniture, at which time defendants advised plaintiffs that Johnson Trailer Sales had repossessed the trailer the preceding Friday. The *feme* plaintiff testified: "I told Mr. Creech I was looking to him for our trailer, or the money, one, and he said if we would give him the money he would go and get the trailer, . . ." Also, Johnson Trailer Sales notified plaintiffs that they had repossessed the trailer.

5. While plaintiffs had possession of the trailer they made improvements thereon, and on 18 October, 1952, when defendants took possession of it, the trailer was reasonably worth $2,600.00.

Evidence offered by defendants tends to show:

1. The $2,100.00 note and conditional sales contract executed by plaintiffs were assigned by Johnson Trailer Sales to the Michigan National Bank. While the $2,100.00 was assigned (endorsed) without recourse, Johnson Trailer Sales agreed that they would "at any time upon demand repurchase from Michigan National Bank the trailer covered by the contract of conditional sale within referred to for the amount then remaining unpaid."

2. Johnson Trailer Sales received notice of plaintiffs' default and was authorized by the Michigan National Bank, which then held the papers, to locate and repossess the trailer. While neither plaintiffs nor defendants knew this at the time of repossession on 21 November, 1952, the *feme* plaintiff testified that she learned later that this was so. The trailer was repossessed by Johnson Trailer Sales on 21 November, 1952.

At the close of all the evidence, the court below entered judgment as of nonsuit and dismissed the action. Plaintiffs excepted and appealed, assigning errors.

*W. P. Burkhimer for plaintiffs, appellants.*
*Aaron Goldberg for defendants, appellees.*

BOBBITT, J. The complaint, in substance, alleges: (1) plaintiffs' ownership and possession of the trailer; (2) the delivery of possession by

plaintiffs to defendants as bailees upon the specific terms alleged; (3) the failure of defendants to redeliver possession to plaintiffs upon demand; and (4) the value of the trailer. Plaintiffs sue for the value of the trailer, not to recover possession thereof. Defendants, by answer, admit they do not have the trailer, alleging that Johnson Trailer Sales had repossessed the trailer as authorized by the conditional sales contract.

Plaintiffs, by their allegations, base their case squarely and solely upon defendants' failure to redeliver the trailer to plaintiffs in breach of their alleged duty to do so. There are no allegations that the trailer was in any way damaged while in defendants' possession. Nor are there allegations of negligence, fraud or connivance by the defendants in connection with the repossession of the trailer by Johnson Trailer Sales, or of any advantage accruing to defendants by such repossession.

In an action in the nature of a common law action in trover and conversion, as distinguished from an action in trespass, proof of surrender of the chattel to the true owner is a complete defense. *Hostler v. Skull,* 1 N.C. 183, Tayl. 152, 1 Am. Dec. 583; *Dowd v. Wadsworth,* 13 N.C. 130, 18 Am. Dec. 567; *Barwick v. Barwick,* 33 N.C. 80; *Pitt v. Albritton,* 34 N.C. 74; *Boyce v. Williams,* 84 N.C. 275; *Vinson v. Knight,* 137 N.C. 408, 49 S.E. 891.

In *Thompson v. Andrews,* 53 N.C. 125, this Court recognized and applied this principle in an action by bailor against bailee. The action was brought to recover the value of wheat left by plaintiff's agent at defendant's mill with instructions to keep it until plaintiff called for it, to which defendant assented. Defendant delivered the wheat to a third party (Pickard), who had demanded it as owner. It was held that delivery to the true owner was a complete defense to plaintiff's action. *Battle, J.,* for this Court, says: "If Pickard were the real owner of the article, could the plaintiff's act of bailing it to the defendant prevent Pickard from claiming it and recovering its value, if it were withheld from him by the defendant? Surely not. No man can be thus deprived of the right of demanding his property from any person who has possession of it and retains it against his will. The refusal of the possessor to deliver it upon such a demand would be evidence of a conversion, for which, if unexplained, the owner would be entitled to recover the full value of his property. If, then, the possessor cannot upon the ground of his being the bailee of another person, resist the claim of the true owner, his surrender of the article to the owner must necessarily be a defense against the action of the bailor, founded upon the charge of a conversion of the property."

An accepted principle in the law of bailments is that, in short phrase, the bailee is estopped to dispute or deny the bailor's title. A complete and accurate statement of this principle is given us by *Judge Dobie:* "The bailee is not permitted to dispute the bailor's title, at the time of the

delivery of the goods to him, by setting up in himself an adverse title to the goods as of that time." Dobie, Bailments and Carriers, sec. 14. *Peebles v. Farrar,* 73 N.C. 342, cited by appellant, illustrates the factual situation in which the principle applies. There, the plaintiff (landlord) delivered to the defendant (merchant) seven bales of cotton. The defendant agreed to store it in his yard and take care of it for the plaintiff. Thereafter, the defendant sold the cotton and applied the proceeds of sale on a mortgage debt due him by plaintiff's tenant. Plaintiff recovered from defendant the value of the cotton. The matter is put succinctly by *Pearson, C. J.:* "His Honor . . . instructed the jury that the receipt of the cotton by the defendant of the plaintiff, with an express promise on the part of the defendant that he would take care of the cotton for the plaintiff, constituted the relation of 'bailor and bailee.' There can be no doubt about that. His Honor further instructed the jury that a bailee is not allowed to dispute the title of the bailor *and set up title in himself.* This is familiar learning. The matter is too plain for discussion." (Emphasis added.) 6 Am. Jur., Bailments sec. 99; Annotation, 43 A.L.R. p. 153 *et seq.*

The law in other jurisdictions is summarized as follows: "As an exception to the general rule that a bailee is estopped to deny his bailor's title, the weight of modern authority supports the view that where a demand by the true owner, entitled to immediate possession, has been made upon the bailee, and the property has been turned over to him, the bailee, where he acts in good faith and without fraud or connivance, may show the title of the true owner and delivery to him as an excuse for the failure to redeliver to the bailor." 6 Am. Jur., Bailments sec. 107. See, also, Annotation, 43 A.L.R. p. 157 *et seq.*

If a bailee surrenders possession of a chattel to a person other than the bailor, or as authorized by the terms of the bailment, he does so at his risk and peril for neither good faith nor honest mistake will afford protection. Lawson, Bailments sec. 22 (d). The only defense is that such surrender of the chattel was to the true owner.

If Johnson Trailer Sales was entitled to repossess the trailer on 21 November, 1952, had it been in the actual possession of plaintiffs at that time, it had equal right to repossess the trailer when in actual possession of the bailee, the bailee's possession being in the right of the bailor. For, against a third party asserting ownership, "the bailee can never be in a better situation than his bailor." Story, Bailments sec. 102. Repossession by a lienholder then entitled to possession as against the bailor is a complete defense to the cause of action alleged in the complaint.

True, proof of the facts alleged in the complaint, together with defendants' admission that Johnson Trailer Sales obtained possession from defendants, nothing else appearing, is sufficient, *prima facie,* to require

submission to the jury. *Ins. Co. v. Motors, Inc.*, 240 N.C. 183, 81 S.E. 2d 416, and cases cited. But when the facts disclosed by plaintiffs' evidence, together with undisputed evidence offered by defendants tending to explain or make clear that which has been offered by plaintiffs, *Singletary v. Nixon*, 239 N.C. 634, 80 S.E. 2d 676, establish that the party obtaining possession was legally entitled to such possession as against plaintiffs, the *prima facie* case fades out in the light of such facts. *Morgan v. Bank,* 190 N.C. 209, 129 S.E. 585; *Swain v. Motor Co.,* 207 N.C. 755, 178 S.E. 560.

Plaintiffs admittedly had defaulted in their payments and the lienholder was entitled to immediate possession. Johnson Trailer Sales repossessed the trailer. In so doing it acted for the bank and in its own behalf. It was obligated to purchase the trailer from the bank by paying therefor the amount of the unpaid balance of the $2,100.00 debt. It was authorized by the bank to make the repossession. After repossession, Johnson Trailer Sales paid the bank and got from the bank the originals of the $2,100.00 note and conditional sales contract. These were identified by Mr. Blaine Johnson, owner of Johnson Trailer Sales, offered as a witness by defendants; and these originals were offered in evidence. Plaintiffs' evidence tends to establish rather than challenge Johnson Trailer Sales' right of repossession.

If, as appellant contends, evidence tending to show that plaintiffs received prompt notice of the repossession by Johnson Trailer Sales and that plaintiffs had opportunity and ability to get the trailer by payment of the debt secured by the conditional sales contract but were unwilling to do so, is irrelevant, this is so because the cause of action alleged turns upon whether the lienholder was legally entitled to repossess the trailer rather than upon the lienholder's or the plaintiffs' subsequent conduct in relation thereto.

Conflicting evidence, (1) as to whether defendants agreed to advance payments to the lienholder in order to get additional time to sell the trailer, and (2) as to whether defendants agreed to notify plaintiffs in the event the lienholder should demand possession, is beyond the scope of the pleadings and without significance on the question presented here. Too, conflicting evidence as to whether the repossession by Johnson Trailer Sales was at night, in the absence of defendants, or in daylight, in the presence of one of the defendants, is beside the point; for the determinative question here is the legal right of Johnson Trailer Sales to repossess, not the circumstances of such repossession.

Appellants' other assignments of error have been carefully considered. However, since none deals with a matter that would affect the correctness of the judgment of the court below, discussion thereof is unnecessary.

The plaintiffs proceed on the theory they can recover from defendants the value of the trailer just as if there were no lien (in default) thereon. Such lien is much too significant to be ignored.

For the reasons stated, the judgment of the court below is

Affirmed.