**JOHNSON v. N.C. DEP'T OF CULTURAL RES.**

[223 N.C. App. 47 (2012)]

HARVEY WILSON JOHNSON, ET AL., PLAINTIFFS v. NORTH CAROLINA DEPARTMENT
OF CULTURAL RESOURCES, ET AL., DEFENDANTS

No. COA12-173

(Filed 2 October 2012)

## 1. Bailments—revocable at any time—not converted to gift

The trial court did not err in an action involving the owner-
ship of a collection of various manuscripts and documents
(Collection) that belonged to plaintiffs' ancestor Colonel Charles
E. Johnson (Johnson) by granting summary judgment to plain-
tiffs. The Collection was held by the North Carolina Department
of Cultural Resources as a bailee, revocable at any moment by the
bailor, Johnson, and no length of possession, under such bail-
ment, could make the property belong to the bailee. The bailment
did not convert to a gift upon Johnson's death.

## 2. Bailments—ability to recall bailment—fully devisable to heirs

The trial court did not err in an action involving the owner-
ship of a collection of various manuscripts and documents
(Collection) that belonged to plaintiffs' ancestor Colonel Charles
E. Johnson (Johnson) by granting summary judgment to plain-
tiffs. Johnson's interest in the Collection, including his ability to
recall the Collection under the express terms of the bailment, was
fully devisable to his heirs.

## 3. Wills—provisions sufficient to convey interest—collection of manuscripts and documents

The trial court did not err in an action involving the owner-
ship of a collection of various manuscripts and documents
(Collection) that belonged to plaintiffs' ancestor Colonel Charles
E. Johnson (Johnson) by granting summary judgment to plaintiffs.
The provisions of Johnson's and his wife's wills were sufficient to
convey their interests in the Collection to their descendants.

## 4. Statutes of Limitation and Repose—bailments—begins to run when bailee refuses to return bailment upon bailor's request

The trial court did not err in an action involving the owner-
ship of a collection of various manuscripts and documents
(Collection) that belonged to plaintiffs' ancestor Colonel Charles
E. Johnson (Johnson) by granting summary judgment to plain-

tiffs. The transfer of the Collection to the North Carolina Department of Cultural Resources was pursuant to a bailment and the statute of limitations does not begin to run until the bailor demands return of the bailed property and the bailee refuses to return it. Plaintiffs filed their declaratory judgment well within the applicable statute of limitations.

**5. Laches—no change in relations of parties—no prejudice— no claim until after demand**

The trial court did not err in an action involving the ownership of a collection of various manuscripts and documents (Collection) that belonged to plaintiffs' ancestor Colonel Charles E. Johnson (Johnson) by granting summary judgment to plaintiffs. The facts presented by the State did not establish the defense of laches as there was no change in the relations of the parties, the State failed to demonstrate any prejudice which would justify the application of laches, and plaintiffs had no viable claim against the State until after the State refused to return the Collection upon plaintiff Harvey Johnson's demand in 2008.

Appeal by defendants from order entered 28 October 2011 by Judge Shannon Joseph in Wake County Superior Court. Heard in the Court of Appeals 16 August 2012.

*Brady Morton, PLLC, by R. Daniel Brady and Travis K. Morton, for plaintiff-appellees.*

*Attorney General Roy Cooper, by Special Deputy Attorneys General L. McNeil Chestnut, Lars F. Nance, and Karen A. Blum, for defendant-appellants North Carolina Department of Cultural Resources and North Carolina State Archives.*

*Patricia Harris Holden, Charles Johnson Harriss, Jr., and Herbert S. Harriss, pro se, for defendant-appellees.*

*Burley B. Mitchell, Jr., Willis P. Whichard, and Robert F. Orr, for Friends of the Archives, Inc., amicus curiae.*

CALABRIA, Judge.

The North Carolina Department of Cultural Resources ("the Department") and the North Carolina State Archives ("the Archives")(collectively "the State") appeal the trial court's order granting summary judgment to Harvey Wilson Johnson ("Harvey Johnson"), Sean Johnson, Bruce Charles Johnson, Sarah Johnson

Tuck, Mark Johnson, Richard M. Johnson, Virginia Fisk Johnson, and Grace Johnson McGoogan (collectively "plaintiffs"). The trial court ruled that plaintiffs were the owners of the Charles E. Johnson Collection ("the Collection"). We affirm.

## I. Background

Colonel Charles E. Johnson ("Johnson") was a descendent of former United States Supreme Court Justice James Iredell, Sr. and former North Carolina Governor James Iredell, Jr. Johnson owned the Collection, which consisted of various manuscripts and documents that belonged to his ancestors. In 1910, Johnson loaned the Collection to the North Carolina Historical Commission ("the Historical Commission").

In a letter to R.D.W. Connor ("Connor"), Secretary of the Historical Commission, dated 21 December 1910, Johnson stated: "You will remember that my position in this is that I have loaned [the Collection] to the State with the right of recall and repossession at any time if I see fit." In a letter dated 23 December 1910, Connor replied to Johnson and stated that "[i]t is thoroughly understood by the North Carolina Historical Commission that the 'Charles E. Johnson Collection' of manuscripts deposited by you with the Commission, was deposited merely as a loan, subject to your recall at any time you may see fit."

Johnson died on 9 September 1923. He did not exercise his right to recall the Collection prior to his death. In his will, Johnson devised his entire estate to his wife, Mary Ellis Johnson ("Mrs. Johnson"), who he also named as his executrix. The Collection was not specifically mentioned in Johnson's will.

Mrs. Johnson died on 25 March 1925, before she had completed the administration of Johnson's estate. Mrs. Johnson's will did not specifically mention the Collection, but it included a residuary clause which encompassed any property not specifically bequeathed in the will. When Mrs. Johnson's estate was closed, the Collection was not listed as an asset in the administration documents.

In 2008, plaintiff Harvey Johnson, a descendent of Johnson, discovered the December 1910 correspondence between Johnson and Connor. On 16 June 2008, Harvey Johnson's attorney contacted the Department and claimed an ownership interest in the Collection. The Department refused to acknowledge Harvey's interest in the Collection and would not return it to him.

On 22 June 2010, plaintiffs, who are some of Johnson's descendants, filed a declaratory judgment action in Wake County Superior Court against the Department, the Archives, and six other descendants of Johnson. In its answer, the State asserted several affirmative defenses, including the statute of limitations and the doctrine of laches.

Plaintiffs and the State each filed motions for summary judgment. On 28 October 2011, the trial court entered an order which granted plaintiffs' motion and denied the State's motion. The State appeals.[1]

## II.  Standard of Review

Summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2011). We review a trial court's order granting summary judgment *de novo. Builders Mut. Ins. Co. v. N. Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006).

## III.  Effect of Johnson's Death

[1] The State argues that the trial court erred in granting summary judgment to plaintiffs because the Collection was a bailment which converted to a gift to the Department upon his death. We disagree.

"A bailment is created upon the delivery of possession of goods and the acceptance of their delivery by the bailee." *Flexlon Fabrics, Inc. v. Wicker Pick-Up & Delivery Service, Inc.*, 39 N.C. App. 443, 447, 250 S.E.2d 723, 726 (1979). "[T]he obligation to redeliver or deliver over the property at the termination of the bailment on demand is an essential part of every bailment contract." *Hanes v. Shapiro*, 168 N.C. 24, 31, 84 S.E. 33, 36 (1915). In the instant case, it is undisputed that when Johnson transferred the Collection to the Historical Commission, the transfer created a bailment, with Johnson retaining the right to recall the Collection at any time.

However, the State contends that, pursuant to our Supreme Court's decision in *Largent v. Berry*, 48 N.C. 531 (1856), it is the law in North Carolina that "the bailment terminated upon Col. Johnson's

---

1. Defendants Patricia Harriss Holden, Charles Johnson Harris, Jr., and Herbert S. Harriss joined plaintiffs' request that Johnson's heirs be declared the owners of the Collection. As a result, they are appellees in the instant appeal. The remaining three defendants, Bradford White Johnson, Kirby Harris Rigsby, and Margaret Harriss are not parties to this appeal.

death and ownership of the Collection vested in the Department at that time." In *Largent*, the defendant's father-in-law, Elijah Largent ("Largent") made a parol gift of a slave to the defendant. *Id.* at 531. Largent then became incompetent, and his guardian demanded that the defendant return the slave. *Id.* at 531-32. The defendant refused, and the guardian filed an action for conversion. *Id.* at 532. The *Largent* Court held that the guardian could not recover the slave under these facts, as he could not revoke a gift that had been given when Largent was competent. *Id.* Specifically, the Court reasoned:

> The parol gift made by [Largent] of the slave in question to the defendant, was, it is true, a mere bailment, which [Largent] might have terminated at any time during his life. The possession of the donee, though held subject to the reclamation of the donor, yet, so far conferred an inchoate right upon the donee, that it might become a complete title by the death of the donor intestate, and without having revoked the gift. Such is manifestly the effect of the proviso to sec. 17, ch. 37 Rev. Stat. This inchoate right was originated by the intention of the donor, exhibited by his putting the slave into the actual possession of the donee; and the title could be prevented from becoming perfect only by a change of that intention, manifested in a proper manner. . . . [Largent's] committee, after he became *non compos mentis*, had the charge of his person and of his estate, but not of his mind. The committee could no more revoke such a gift, made by a *lunatic*, than he could revoke a will made by him, during a lucid interval, or before he became *non compos mentis*.

*Id.*

The State seizes on the *Largent* Court's use of the term "bailment" and attempts to apply the Court's discussion of the effects of Largent's death to the transfer at issue in that case to all bailments. However, the State's argument completely ignores the remainder of the opinion, which repeatedly refers to the transfer as a gift. The language of *Largent*, referring to the transfer as both a bailment and a gift, is consistent with the law which governed the specific transfer of a slave from a parent to a child at that time. As the Court explained in *Arnold v. Arnold*:

> Where an oral gift of a slave is made to a child, it may, or may not, according to an express provision of the act of 1806, be an advancement at the election of the parent at any time during his life, and, therefore, of necessity, the relation between them during that period is that of bailor and bailee[.]

35 N.C. 174, 178 (1851); *see also Hicks v. Forrest*, 41 N.C. 528, 531-32 (1850). In this context, it is clear that the *Largent* Court was only discussing the effect of the father-in-law's death because the transfer at issue was the transfer of a slave from a parent to a child. Contrary to the State's argument, *Largent* is inapplicable to bailments generally.

Instead, the well-established law in North Carolina is that when property is held pursuant to "a bailment, revocable at any moment by the bailor[,] . . . *no length of possession, under such a bailment, can make the [property] the property of the bailee.*" *Hill v. Hughes*, 18 N.C. 336, 338 (1835)(emphasis added). Moreover, "[a]n accepted principle in the law of bailments is that, in short phrase, the bailee is estopped to dispute or deny the bailor's title." *Herring v. Creech*, 241 N.C. 233, 237, 84 S.E.2d 886, 889 (1954). Under these principles, the State, as bailee, cannot claim ownership of the Collection by virtue of Johnson's death. This argument is overruled.

## IV.  Devisibility of Right to Recall

[2] The State argues that the trial court erred by granting plaintiffs' motion for summary judgment because Johnson's right to recall the Collection was not devisable. We disagree.

In support of its argument, the State cites *Woodard v. Chalk*, which recites the common law rule which permitted the disposition of personal property by will, but not by deed. 236 N.C. 190, 194, 72 S.E.2d 433, 435 (1952). This rule was in effect at the time Johnson loaned the Collection to the Historical Commission as well as at the time of his death. The State contends that since "Johnson did not create a future legal interest in the Collection by will, his descendants have no right to recall the Collection now."

However, the State's argument once again disregards important portions of the decision it cites. The *Woodard* Court traced the origins of the common law rule at issue. Originally, "[f]uture interests *other than those arising out of the law of bailments* were not permitted in the field of personal property." *Id.* at 193, 72 S.E.2d at 435 (citations omitted and emphasis added). Later, "the courts of England in the seventeenth century relaxed the rule by holding that a future interest in personal property could be created by will." *Id.* Thus, although North Carolina adhered to that common law rule at the time of *Woodard*, it is clear that that rule was never applied to bailments.

In the instant case, since the transfer by Johnson to the State constituted a bailment, the *Woodard* rule does not apply. Johnson's inter-

est in the Collection, including his ability to recall the Collection under the express terms of the bailment, was fully devisable to his heirs. This argument is overruled.

## V.  Estates of Johnson and Mrs. Johnson

**[3]** The State argues that the trial court erred in granting plaintiffs' motion for summary judgment because plaintiffs cannot establish title in the Collection through the estates of Johnson and Mrs. Johnson. We disagree.

The State notes that neither Johnson nor Mrs. Johnson listed the Collection in their wills and that the Collection was not listed in either of the Johnsons' respective estate administration documents. According to the State, this evidence demonstrates neither Johnson nor Mrs. Johnson believed they still possessed an interest in the Collection.

However, Johnson's will clearly bequeathed all of his property to his wife. In addition, Mrs. Johnson's will included a general residuary clause which distributed all of her property "whether real, personal, or mixed," which had not specifically been distributed in the remainder of her will. These provisions were sufficient for the Johnsons to convey their interests in the Collection to their descendants, regardless of whether they believed they maintained ownership in the Collection. *See Ireland v. Foust*, 56 N.C. 498, 501 (1857)("The presumption is that every one who makes a will intends to dispose of his whole estate, and one purpose of a general residuary clause is to dispose of such things as may have been forgotten or overlooked, or may be unknown."). The fact that the Collection was never mentioned in either the Johnsons' wills or their estate administration documents is immaterial. This argument is overruled.

## VI.  Statute of Limitations

**[4]** The State argues that the trial court erred by granting plaintiffs' motion for summary judgment and denying the State's motion for summary judgment because plaintiffs' claims were barred by the statute of limitations. We disagree.

In its brief, the State contends that plaintiffs should have brought their claim as an impeachment of the final accounting of Johnson and Mrs. Johnson's estate. The State is correct that, for such a claim, a ten year statute of limitations applied at the time the Johnsons' respective estates were administered. *See Woody v. Brooks*, 102 N.C. 334, 340, 9 S.E. 294, 296 (1889).

However, plaintiffs' claim cannot be accurately characterized as an impeachment of a final estate accounting. Instead, plaintiffs seek the return of property that was provided to the State as a bailment. The well-established rule in North Carolina is that, for transfers of property pursuant to a bailment, the statute of limitations will not begin to run until the bailor demands return of the bailed property and the bailee refuses to return it. In *Koonce v. Perry*, our Supreme Court stated that "while an abortive attempt to regain possession, as by demand and refusal, . . . will put the statute of limitations in action; yet, no length of possession under claim of title and use of the property as one's own will." 53 N.C. 58, 61 (1860). Similarly, in *Green v. Harris*, the Court stated:

> Now it has never been held, that the naked declaration of a bailee, that he claimed the property in his own right, without any change of the possession *and without any demand or wish to resume the possession by the bailor*, although such declaration might be public or made even to the bailor himself, would *instantly* terminate the bailment and immediately convert the possession into an adverse one, so as to set the statute of limitations in motion from the day of such declaration. The contrary we conceive to be settled law.

25 N.C. 210, 221 (1842)(emphasis added).

In the instant case, it is undisputed that no demand was made for the return of the Collection until 16 June 2008. Therefore, the statute of limitations began when the State refused this demand. Plaintiffs filed their declaratory judgment action on 22 June 2010, which was well within the applicable statute of limitations. Thus, plaintiffs' claims were timely filed. This argument is overruled.

## VII. Laches

The State argues that the trial court erred by granting plaintiffs' motion for summary judgment and denying the State's motion for summary judgment because plaintiffs' claim was barred by laches. We disagree.

> In determining whether plaintiffs' suit is, at [the summary judgment] stage of the proceeding, barred by the doctrine of laches, we face a three-fold question: (1) Do the pleadings, affidavits and exhibits show any dispute as to the facts upon which defendants rely to show laches on the part of plaintiffs? (2) If not, do the undisputed facts, if true, establish plaintiffs' laches? (3) If

so, is it appropriate that defendants' motion for summary judgment . . . be granted?

*Taylor v. City of Raleigh*, 290 N.C. 608, 621, 227 S.E.2d 576, 584 (1976).In the instant case, there is no dispute about the facts upon which the State relies to show laches. Thus, we must determine if these facts are sufficient to establish the State's affirmative defense.

> To establish the affirmative defense of laches, our case law recognizes that 1) the doctrine applies where a delay of time has resulted in some change in the condition of the property or in the relations of the parties; 2) the delay necessary to constitute laches depends upon the facts and circumstances of each case; however, the mere passage of time is insufficient to support a finding of laches; 3) the delay must be shown to be unreasonable and must have worked to the disadvantage, injury or prejudice of the person seeking to invoke the doctrine of laches; and 4) the defense of laches will only work as a bar when the claimant knew of the existence of the grounds for the claim.

*MMR Holdings, LLC v. City of Charlotte*, 148 N.C. App. 208, 209-10, 558 S.E.2d 197, 198 (2001). In the instant case, the facts presented by the State do not establish the defense of laches.

A. Change in Relations of the Parties

The State first contends that there has been a change in the relations of the parties because the original bailor, Johnson, is deceased. However, that fact does not change the *relations between* the parties. The relationship between the parties regarding the Collection is still that of bailor and bailee. Plaintiffs have inherited the Collection from Johnson and his descendants, and possess the same rights in the Collection that Johnson possessed. Accordingly, there has been no change in the relations of the parties.

B. Reasonableness of the Delay and Prejudice

Next, the State asserts that plaintiffs' delay in demanding the return of the Collection has led to a loss of evidence which has prejudiced the State. Specifically, the State notes that the original individuals who were involved in the transfer of the Collection are no longer able to provide any evidence on the terms of the transfer or the manner in which the Collection would be treated upon Johnson's death. In support of its argument, the State cites *Stratton v. Royal Bank of Canada*, ___ N.C. App. ___, 712 S.E.2d 221 (2011).

In *Stratton*, the plaintiff's mother purchased stock in the Bank of Manteo in 1927. *Id.* at ___, 712 S.E.2d at 224. However, there was no documentary evidence demonstrating her ownership of the stock after 1933. *Id.* The plaintiff discovered the stock in 1982, after her mother's death. *Id.* at ___, 712 S.E.2d at 225. The plaintiff then conducted a preliminary investigation into the value of the stock, meeting with her stockbroker and several attorneys regarding the value of the stock. *Id.* These consultations occurred no later than 1987. *Id.* The plaintiff then waited approximately 20 years after she first investigated her claim before she instituted an action against the defendant Royal Bank of Canada ("RBC"), who would have been the successor in interest to the stock purchase after a series of mergers. *Id.* This Court found that RBC was prejudiced by the plaintiff's delay because there was no "living person who has material information concerning the Stock Certificate" and the plaintiff's delay "likely contributed to the lack of documentary evidence" regarding the stock. *Id.* at ___, 712 S.E.2d at 231.

In contrast to *Stratton*, in the instant case, there is clear documentary evidence to establish that Johnson loaned the Collection to the Historical Commission, which includes the terms Johnson stated were to apply to the loan. The correspondence between Johnson and Connor incontrovertibly demonstrates that Johnson was loaning the Collection to the Commission with the express right to recall and repossess the Collection at any time and that Conner understood the terms of the loan. Moreover, Johnson's will, also included in the record, plainly demonstrates that he intended for *all* of his property to be devised to his wife. These documents provided the State with ample evidence of the terms of the Collection's transfer and of Johnson's wishes on how the Collection should be treated upon his death.

The State also argues that it was prejudiced by spending "approximately $292,000 to conserve, restore, and publish the documents in the Collection." This spending is immaterial to the application of laches. "[T]he 'prejudice element' of the laches doctrine . . . refers to whether a defendant has been prejudiced in its ability to defend against the plaintiff's claims by the plaintiff's delay in filing suit." *Id.* at ___, 712 S.E.2d at 231. The expenditure of $292,000, which the State attributes to the Collection, had no impact on the State's ability to defend against plaintiffs' claim. In addition, it is a bailee's duty "to exercise ordinary care to protect the property bailed against damage and to return it in as good condition as it was when he received it."

*Vincent v. Woody*, 238 N.C. 118, 120, 76 S.E.2d 356, 358 (1953). The costs borne by the State are for actions which are consistent with this duty. Ultimately, the State has failed to demonstrate any prejudice which would justify the application of laches.

### C. Knowledge of Grounds for Claim

Finally, the State argues that plaintiffs knew or should have known of their claim long before they brought their declaratory judgment action. The State again relies upon *Stratton*, which recognizes that constructive, rather than actual, knowledge of a claim can be used to establish laches. *See Stratton*, ___ N.C. App. at ___, 712 S.E.2d at 231. The State contends that Johnson's descendants had sufficient opportunity to discover evidence of their claim to the Collection and that, as a result, they should be charged with constructive knowledge of their claim.

However, it is immaterial whether Johnson's heirs had actual or constructive knowledge of their ownership interest in the Collection, either immediately after Johnson's death or in the ensuing decades. As previously noted, a bailor has no claim against a bailee until a demand is made for the bailed goods and is refused. *See Koonce*, 53 N.C. at 61. In the instant case, it is undisputed that Johnson's heirs did not demand the return of the Collection until 2008. Accordingly, the State had the right to continue to possess the Collection under the terms of the bailment until that time. Thus, Johnson's descendants could not have known that they had a claim against the State until it failed to honor its obligation as bailee to return the Collection after Harvey Johnson's demand. Once the State refused to return the Collection, plaintiffs pursued their claim in a timely manner.

The undisputed facts presented by the State do not support the application of laches to plaintiffs' claim for the return of the Collection. Consequently, the trial court properly denied the State's motion for summary judgment on this issue. This argument is overruled.

### VIII. Conclusion

Johnson's transfer of the Collection to the Historical Commission created a bailment, which continued after his death. Ownership of the Collection, including the right to recall the Collection, properly passed to Johnson's descendants through his will, which bequeathed all of his property to Mrs. Johnson, and subsequently through the residuary clause included in Mrs. Johnson's will. Plaintiffs had no viable claim against the State until after the State refused to return

the Collection upon Harvey Johnson's demand in 2008. Plaintiffs timely pursued this claim, and thus, the claim was not barred by either the statute of limitations or the doctrine of laches. Consequently, the trial court properly granted plaintiffs' motion for summary judgment. The trial court's order is affirmed.

Affirmed.

Judges STROUD and McCULLOUGH concur.