WALTER L. HOISINGTON, AS GUARDIAN AD LITEM FOR JILL LEE MARKER, AN INCOMPE-
TENT, PLAINTIFF v. ZT-WINSTON-SALEM ASSOCIATES, ZAREMBA ASSOCIATES
LIMITED PARTNERSHIP, ZAREMBA REALTY CORPORATION, TOYS "R" US,
INC., TOYS "R" US-DELAWARE, INC., WINSTON-SALEM RETAIL ASSOCI-
ATES LIMITED PARTNERSHIP, CENTERPOINT SOUTHERN, INC., AND THE
WACKENHUT CORPORATION, DEFENDANTS, AND ZT-WINSTON-SALEM ASSOCI-
ATES, ZAREMBA ASSOCIATES LIMITED PARTNERSHIP, ZAREMBA REALTY
CORPORATION, TOYS "R" US, INC., TOYS "R" US-DELAWARE, INC., WINSTON-
SALEM RETAIL ASSOCIATES LIMITED PARTNERSHIP, AND CENTERPOINT
SOUTHERN, INC., DEFENDANTS/THIRD-PARTY PLAINTIFFS v. THE TREE FACTORY,
INC., D/B/A THE SILK PLANT FOREST, THIRD-PARTY DEFENDANT

No. COA98-1211

(Filed 15 June 1999)

### 1. Negligence— security guard—no duty to store clerk

The trial court did not err by granting summary judgment for
a security company on a negligence claim arising from an attack
upon a store employee in a shopping center where the documents
filed in the trial court revealed no duty owed the employee by
virtue of the contract between the security company and the
owner of the shopping center.

### 2. Contracts— security services at shopping center—store employee not third-party beneficiary

The trial court properly granted summary judgment for
defendant-security company in an action arising from an assault
upon a store employee at a shopping center where plaintiff-
employee contended that she was a third-party beneficiary to the
contract between the security company and the shopping center
owner. Although complaints from employees may have been the
catalyst for a contract revision, that revision provided only
increased security for the owner and, to the extent that the
employee was benefited by the contract, that benefit was inci-
dental and does not entitle plaintiff to enforce a contract on her
own behalf.

### 3. Contracts— indemnity—settlement

The trial court did not err by granting summary judgment for
a security company on a cross claim by a shopping center owner
under an indemnity clause in an action arising from an assault on
a store employee. The plain language of the indemnity clause
calls for indemnification only if the shopping center owner were
found liable for actions or omissions of the security company;

there was no evidence that the security company was negligent and damages caused by any negligence by the security company could not be imputed to the owner because the security company is an independent contractor.

### 4. Appeal and Error— appealability—party aggrieved

An appeal by a store was dismissed where an action against the store, the shopping center owner, and a security company arose from an assault on plaintiff store employee but all claims against the store were dismissed and the store brought no claims itself. The store was not a party aggrieved.

Appeal by plaintiff; defendants and third-party plaintiffs Zaremba Group Incorporated, ZT-Winston-Salem Associates, Zaremba Associates Limited Partnership, Zaremba Realty Corporation, Toys "R" Us-Delaware, Inc., and Winston-Salem Retail Associates Limited Partnership; and third-party defendant The Tree Factory, Inc., d/b/a The Silk Plant Forest, from summary judgment entered 16 April 1998 by Judge William Z. Wood, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 13 May 1999.

> *Maready Comerford & Britt, L.L.P., by W. Thompson Comerford, Jr., Clifford Britt, and Martha Marie Eastman, for plaintiff-appellant Walter L. Hoisington, as Guardian Ad Litem for Jill Lee Marker.*

> *Moss & Mason, by Joseph W. Moss and Matthew L. Mason, for defendants/third-party plaintiffs-appellants Zaremba Group Incorporated, ZT-Winston-Salem Associates, Zaremba Associates Limited Partnership, Zaremba Realty Corporation, Toys "R" Us-Delaware, Inc., and Winston-Salem Retail Associates Limited Partnership.*

> *Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Paul C. Lawrence, for third-party defendant-appellant The Tree Factory, Inc., d/b/a The Silk Plant Forest.*

> *Womble Carlyle Sandridge & Rice, P.L.L.C., by Allan R. Gitter, Richard T. Rice, and Jack M. Strauch, for defendant-appellee The Wackenhut Corporation.*

EDMUNDS, Judge.

This case arose out of a brutal assault that took place on 9 December 1995 at Silas Creek Crossing Shopping Center (Silas

Creek), a strip shopping center located in Winston-Salem. Plaintiff Hoisington's ward, Jill Marker, was working at The Tree Factory, Inc., d/b/a The Silk Plant Forest (The Tree Factory), a retail store located in Silas Creek. Shortly before 9:00 p.m., while in her store, she was severely beaten, receiving permanent injuries. The perpetrator was apprehended and convicted in Forsyth County Superior Court.

Defendant/Third-Party Plaintiff ZT-Winston-Salem Associates (ZT-WSA) owns Silas Creek. On 21 September 1994, ZT-WSA, through its agent, Defendant Zaremba Group Incorporated, entered into a services contract with Defendant Wackenhut Corporation (Wackenhut), under which Wackenhut was to provide security guard services at the shopping center. The contract provided the "Scope of Work" to be as follows:

> Vehicular and foot patrol of property maintaining high visibility. (Vehicle shall display Wackenhut Security Corporation sign.) Performing watchclock rounds after midnight to end of shift. Completion of daily reports with copy to client. Act as a deterrent against theft, vandalism and criminal activities. Hours of security coverage shall be from 8:00 p.m. to 4:00 a.m.

Wackenhut assigned employee Brian McKnight to patrol Silas Creek on the night of the attack on Ms. Marker. He arrived on duty at 8:00 p.m., approximately one hour before the assault. According to his deposition, he first drove behind the stores of Silas Creek, then logged in. He was operating his own 1985 Ford Escort Wagon, which had magnetic signs identifying the vehicle as "Wackenhut Security" affixed to its sides. After logging in, McKnight continued driving around Silas Creek for approximately forty-five minutes. During this time he also walked to the CD Superstore and wrote tickets for vehicles parked illegally in handicapped spaces near Blockbuster Video. He testified that the parking lot at Silas Creek was densely crowded that evening with holiday shoppers. At approximately 8:40-8:45 p.m., after completing two rounds of Silas Creek in his car, McKnight parked at a spot where he judged he could maintain surveillance over most of the center. At the time of the assault on Ms. Marker, which occurred between 8:50 and 9:00 p.m., McKnight was in his parked car. He learned of the assault over the police scanner in his vehicle.

Ms. Marker's guardian filed an amended complaint on 8 September 1997 against multiple defendants, including Defendants-Appellants ZT-WSA, Zaremba Associates Limited Partnership, Zaremba Realty Corporation, Toys "R" Us-Delaware, Inc., and

Winston-Salem Retail Associates Limited Partnership (collectively, Zaremba), and against Defendant-Appellee Wackenhut, asserting claims arising out of injuries sustained by Ms. Marker. Thereafter, Zaremba filed both a crossclaim against Wackenhut, seeking indemnity from plaintiff's claims pursuant to the services contract existing between Zaremba and Wackenhut at the time of the assault, and a third-party claim against The Tree Factory. On 21 July 1997, Wackenhut moved for summary judgment as to all claims against it. After hearing arguments on the motion, the trial court allowed Wackenhut's motion on 16 April 1998. Plaintiff then dismissed his claims against the remaining defendants on 27 July 1998, and Zaremba dismissed its third-party claim against The Tree Factory on 6 August 1998. As a result of the various dismissals, the issues before us arise out of the appeals of plaintiff and of Zaremba from the trial court's grant of Wackenhut's motion for summary judgment. The Tree Factory also appeals the trial court's grant of summary judgment in favor of Wackenhut, even though all claims against it were dismissed.

## PLAINTIFF'S APPEAL

In his opposition to the court's grant of summary judgment for Wackenhut, plaintiff asserts both that Wackenhut was negligent and that Ms. Marker was a third-party beneficiary to the contract between Zaremba and Wackenhut. We will address these claims in order.

### I. Negligence

[1] Although negligence actions are rarely susceptible to summary judgment, *see Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 425, 302 S.E.2d 868, 871 (1983), if it is shown the defendant had no duty of care to the plaintiff, summary judgment is appropriate, *see Newsom v. Byrnes*, 114 N.C. App. 787, 790, 443 S.E.2d 365, 368 (1994). "Actionable negligence is established by showing: (1) a failure to exercise due care in the performance of a legal duty owed to the plaintiff under the circumstances and (2) a negligent breach of such duty proximately causing the plaintiff's injury." *Croker v. Yadkin, Inc.*, 130 N.C. App. 64, 68, 502 S.E.2d 404, 407 (citing *Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988)), *disc. review denied*, 349 N.C. 355, —— S.E.2d —— (1998). In a case where actionable negligence is pled, summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Davidson and Jones, Inc.*

*v. County of New Hanover*, 41 N.C. App. 661, 668, 255 S.E.2d 580, 585, *disc. review denied*, 298 N.C. 295, 259 S.E.2d 911 (1979). Plaintiff argues that "[p]ursuant to the specific duties articulated in its contract with Zaremba, Wackenhut had a duty to Jill Marker—the duty to deter criminal activities by maintaining high visibility security at the shopping center through vehicular and foot patrols."

We begin our analysis with a review of *Cassell v. Collins*, 344 N.C. 160, 472 S.E.2d 770 (1996), where the plaintiff was attacked while visiting a tenant at an apartment complex. The apartment management had employed defendant security company (ASI) to guard the property. The unarmed security guard on duty witnessed the attack, but failed to come to the aid of the victim-plaintiff. The plaintiff contended that ASI had breached its duty to her by not intervening during the attack. Our Supreme Court disagreed, finding that "the extent of ASI's duty to plaintiff, if any, is governed by the contract between ASI and [the property owner]." *Id.* at 163, 472 S.E.2d at 772. The contract between the apartment management and defendant ASI provided for a security patrol. A supplemental memorandum from the apartment management to ASI specified only that the guard was "to be visible both as a deterrent to potential vandals as well as a sense of security for residents" and included no language requiring the guard to protect the tenants or their guests from attack. Our Supreme Court held that these documents did not impose on ASI a duty to the plaintiff to protect her from attack and declined to adopt the position that "the mere act of providing a security guard imposed upon ASI any greater duties than those delineated under its contract to provide security services. . . . [W]e cannot conclude that the mere act of providing a security guard imposed upon ASI any duty to prevent Collins from criminally assaulting plaintiff." *Id.* at 164-65, 472 S.E.2d at 773.

In paragraph 26 of his amended complaint, plaintiff alleged that "defendant Wackenhut owed a duty of reasonable care to persons such as Jill Marker to take reasonable steps to protect them from the reasonably foreseeable tortious acts of third persons." He therefore raised almost precisely the issue decided by the *Cassell* Court. In accordance with that decision, we look to the contract between Zaremba and Wackenhut. That contract imposed on Wackenhut a duty to "[a]ct as a deterrent against theft, vandalism and criminal activities" by "maintaining high visibility." This language closely parallels that found in the memorandum in *Cassell*. The instant contract established no duty to "protect" those employed by the tenant businesses at Silas Creek.

Plaintiff now contends that Wackenhut violated the contract by failing to maintain a visible presence in the shopping center because its officer conducted most of his patrol while in his inconspicuous vehicle and spent portions of his time on duty parked some distance from most of the stores. This theory was raised for the first time in plaintiff's appellate brief and pursued at oral argument. We may only consider the pleadings and other filings that were before the trial court. Plaintiff is not permitted on appeal to advance new theories or raise new issues in support of his opposition to the motion. *See Baker v. Rushing*, 104 N.C. App. 240, 246, 409 S.E.2d 108, 111 (1991). Although *Baker* refers to the party moving for summary judgment, we hold that the rule applies equally to both parties. *See Mendelson v. Ben A. Borenstein & Co.*, 608 N.E.2d 187 (Ill. App. 1992); *Unified Industries, Inc. v. Easley*, 961 P.2d 100 (Mont. 1998). Therefore, we may not consider plaintiff's argument based upon the theory that a contract violation occurred through Wackenhut's alleged failure to maintain a sufficient presence. Because we are bound by the documents filed with the trial court below, and because these documents reveal as a matter of law that there was no duty owed Ms. Marker by virtue of the contract between Wackenhut and Zaremba, this assignment of error is overruled.

## II. Third-Party Beneficiary

[2] Plaintiff's next contention is that "plaintiff produced sufficient evidence for a jury to find that Jill Marker was a third-party beneficiary to the contract," and that summary judgment was therefore improperly granted. The status of a tenant's employee as a third-party beneficiary to a security contract is a matter of first impression in North Carolina. "It is well-settled a claimant is a third-party beneficiary if he can establish, ' "(1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; [and] (3) that the contract was entered into for his direct, and not incidental, benefit." ' " *State ex rel. Long v. Interstate Casualty Ins. Co.*, 120 N.C. App. 743, 747, 464 S.E.2d 73, 75-76 (1995) (alteration in original) (citations omitted). There is no question that the first two conditions have been met here; the issue before us is Ms. Marker's status as beneficiary to the contract. Our Supreme Court in 1970 adopted the then-current analysis of third-party beneficiaries established by the Restatement of Contracts.

> Third party beneficiaries are divided into three groups: *donee* beneficiaries, where it appears that the "purpose of the promisee in obtaining the promise of all or part of the performance thereof

is to make a gift to the beneficiary"; *creditor* beneficiaries, where "no purpose to make a gift appears" and "performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary"; and *incidental* beneficiaries, where the facts do not appear to support inclusion in either of the above categories.

*Vogel v. Reed Supply Co. and Supply Co. v. Developers, Inc.*, 277 N.C. 119, 127, 177 S.E.2d 273, 278 (1970) (quoting Restatement of Contracts § 133 (1932)). While donee and creditor beneficiaries to a contract may recover, "[a]n incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee." *Id.* (quoting Restatement of Contracts § 147). The Restatement has since been updated, and now recognizes only "intended and incidental" beneficiaries. *See Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 329 N.C. 646, 652, 407 S.E.2d 178, 182 (1991). This revision of the Restatement does not affect the issue before us, which turns on whether or not there was any intent by the parties to the contract to benefit plaintiff's ward (or, more accurately, those tenant employees who were similarly situated as Ms. Marker). If so, she is an intended beneficiary; if not, she is but an incidental beneficiary and may not recover under the contract.

In determining the parties' intentions, the court "should consider circumstances surrounding the transaction as well as the actual language of the contract." *Id.*; *see also Lane v. Surety Co.*, 48 N.C. App. 634, 639, 269 S.E.2d 711, 714-15 (1980) (stating that the parties' intentions "must be determined by construction of the 'terms of the contract as a whole, construed in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish'"), *disc. review denied*, 302 N.C. 219, 276 S.E.2d 916 (1981). Additionally, " ' "[w]hen a third party seeks enforcement of a contract made between other parties, the contract must be construed strictly against the party seeking enforcement." ' " *Raritan River Steel Co.*, 329 N.C. at 652, 407 S.E.2d at 182 (alteration in original) (citations omitted).

Keeping these principles in mind, we turn first to the language of the contract itself, which states that Wackenhut "is not an insurer of property or persons guarded" and that "[t]he furnishing of the services provided for hereunder shall not be construed as a guarantee of protection against any or all contingencies or occurrences which may arise out of, or be connected with, the furnishing of such services." The "Scope of Work" provision states that Wackenhut's duties

include: "Vehicular and foot patrol of property maintaining high visibility. . . . Performing watchclock rounds after midnight to end of shift. . . . Act as a deterrent against theft, vandalism and criminal activities." Looking next to the circumstances surrounding the transaction, we see that the original contract between Zaremba and Wackenhut only provided for an unarmed security guard with a pager. This contract was renegotiated in 1994, at least in part as a result of tenant complaints about lack of presence of security officers and possible assaults on those working at Silas Creek. The new contract provided that the security guard would be armed and added the language quoted above to the effect that the guard would provide deterrence against illegal acts. We must now determine whether these factors result in more than an incidental benefit to Ms. Marker.

Because this is an issue of first impression, we survey analogous decisions from other states to assist our analysis. In *Gardner v. Vinson Guard Service, Inc.*, 538 So. 2d 13, 14 (Ala. 1988), factually similar to the case at bar, the defendant security company was hired by the plaintiff's employer "to provide protection for vehicles in the parking lot . . . and to protect employees traveling to and from their vehicles. A secondary responsibility of the security guards was to patrol the perimeter around the facility and to make their presence evident." Specific instructions given to the guards required that they meet employees arriving at work to ensure they reached their building safely. On the day in question, the defendant's security officer told the plaintiff-employee upon her arrival at work that a burglary had taken place in her store, but that the burglar had fled and it was safe to enter the building. Once inside, however, the plaintiff was assaulted by a second burglar. The plaintiff sued the security company, alleging, *inter alia*, that she was a third-party beneficiary to the contract between her employer and the security company. The court held that under these facts the plaintiff was not a third-party beneficiary to the contract between the security company and her employer.

Likewise, New York courts have held an injured employee to be only an incidental beneficiary to a contract between his employer and a security company. In *Bernal v. Pinkerton's, Inc.*, 382 N.Y.S.2d 769 (N.Y. Sup. Ct. 1976), *aff'd*, 394 N.Y.S.2d 638 (N.Y. 1977), the plaintiff-employee was shot by an intruder who entered through a gate left unguarded by the defendant security company. The contract between the employer and the security company provided that the latter would "[f]urnish uniformed guards for the proper protection of

**HOISINGTON v. ZT-WINSTON-SALEM ASSOCS.**

[133 N.C. App. 485 (1999)]

[New York Telephone] Company facilities and buildings . . . [p]rotection to include prevention and detection of theft, fire, safety hazards and the screening of personnel entering and leaving . . . ." *Id.* at 770 (first two alterations in original). The plaintiff claimed to be a third-party beneficiary to that contract. The court dismissed the claim, finding it did not appear from the contract that the parties to the contract intended

> to protect [the plaintiff] from physical injury . . . . It cannot be said as a matter of law that it was the intention of the parties under this contract to provide for the protection of plaintiff . . . . The defendant was hired to protect the New York Telephone Company's facilities and buildings, not to protect plaintiff from physical injury.

*Id.* (citations omitted).

An instructive counter-example is found in *Cooper v. IBI Security Service of Florida, Inc.*, 281 So. 2d 524 (Fla. Ct. App.), *cert. denied*, 287 So. 2d 95 (Fla. 1973), where the defendant security agency was hired by Interstate Life Insurance Company for the express purpose of providing armed guards to protect Interstate's agents against assaults as they made cash collections in areas of known danger. The court noted that the agreement stated that the defendant security agency and the plaintiff's employer contracted for the purpose of providing protection for the employees. Because the express terms of the contract manifested the parties' intentions to benefit those in the plaintiff's situation, the court found that the plaintiff was a third-party beneficiary to the contract.

The holdings in these cases are consistent with our Supreme Court's observation in *Raritan River Steel Co.* that a contract will be strictly construed against a party seeking enforcement as a third-party beneficiary. Only in *Cooper*, where the intent to protect the employees was written into the contract, was a plaintiff found to be a third-party beneficiary; otherwise, courts have been reluctant to extend third-party beneficiary status to employees. Here, the contract between Wackenhut and Zaremba did not set out any responsibility of Wackenhut or its security officers toward employees of tenants, nor did the contract name or even mention the employee-tenants. *See Interstate Casualty Ins. Co.*, 120 N.C. App. at 748, 464 S.E.2d at 76. Although the contract was renegotiated in 1994 to include the requirement that the guard be armed, the deposition of Robin Plummer, Wackenhut's Operations Manager and Area

Supervisor at the time of the assault, reveals that the security officers were not armed for the purpose of protecting the tenant's employees, and that, if an assault on such an employee were observed, under no circumstances would the officer go to the aid of the victim. Instead, the officer would use his or her pager (which security officers were required to carry under both the old and the new contracts) to notify police. Defendant's guards, in other words, were expected to respond essentially as had the guard in *Cassell*. Further, the attack on Ms. Marker took place inside The Tree Factory. The wording of the contract does not indicate that Wackenhut's guards were to patrol within the stores of Silas Creek. Finally, the contract required that Wackenhut provide security between 8:00 p.m. and 4:00 a.m., even though the stores at Silas Creek closed at 9:00 p.m. That no employees of tenants would be on the premises during most of the time that the security officer was on duty provides a strong indication that the parties did not enter the contract for the purpose of providing security for employees of tenants.

Construing the contract strictly against the party seeking enforcement as we must, these factors convince us that Wackenhut had no contractual duty to protect Ms. Marker and others similarly situated. Although complaints from employees may have been the catalyst for the revised 1994 contract, that revision provided only increased security for Zaremba. To the extent Ms. Marker was benefitted by the contract, that benefit was incidental and does not entitle her to enforce the contract on her own behalf. This assignment of error is overruled.

ZAREMBA'S APPEAL

[3] We next turn to Zaremba's crossclaim, in which Zaremba seeks indemnification from Wackenhut "with regard to any amounts recovered by the plaintiffs against [Zaremba]." The indemnity language in the Services Contract states that Wackenhut

> shall indemnify and hold harmless Client from and against all liability, damage, loss, claims, demands, and actions of any nature whatsoever, including personal injury, death, or property damage, arising out of any acts or omissions of employees of [Wackenhut] while engaged in the services described in this Contract.

Courts strictly construe an indemnity clause against the party asserting it. *See City of Wilmington v. N.C. Natural Gas Corp.*, 117

N.C. App. 244, 450 S.E.2d 573 (1994). Because Zaremba, which drafted the indemnity clause and required its insertion into the contract, is now asserting indemnification, the language of the contract is to be construed against it. In so doing, the court's function is "to ascertain and give effect to the intention of the parties, and the ordinary rules of contract construction apply." *Kirkpatrick & Assoc. v. Wickes Corp.*, 53 N.C. App 306, 308, 280 S.E.2d 632, 634 (1981). However, "[i]ndemnity against negligence must be made unequivocally clear in the contract, particularly in a situation where the parties have presumably dealt at arm's length." *Candid Camera Video v. Mathews*, 76 N.C. App. 634, 636, 334 S.E.2d 94, 96 (1985), *disc. review denied*, 315 N.C. 390, 338 S.E.2d 879 (1986).

It is not immediately evident what is to be indemnified. There is no assertion in the record that there have been settlements, although the voluntary dismissals with prejudice of some parties are suggestive; moreover, counsel at oral argument advised this Court that there had been settlements. We proceed in reliance on that information. The plain language of the indemnity clause in the contract calls for indemnification of Zaremba only if Zaremba were found liable for actions or omissions of Wackenhut and its employees; the contract does not purport to indemnify Zaremba from its own negligence. Finding liability would therefore require (1) proof that Wackenhut was actually negligent and (2) imputed liability to Zaremba. Zaremba's argument fails on both grounds. First, as we held above, there is no evidence that Wackenhut was negligent. Second, damages caused by any negligence on Wackenhut's part could not be imputed to Zaremba, because Wackenhut is an independent contractor, as is specified by the contract between the parties. It has long been the law in this state that "one who employs an independent contractor is not liable for the independent contractor's negligence unless the employer retains the right to control the manner in which the contractor performs his work." *Woodson v. Rowland*, 329 N.C. 330, 350, 407 S.E.2d 222, 234 (1991); *see also Rivenbark v. Construction Co.*, 14 N.C. App. 609, 188 S.E.2d 747, *cert. denied*, 281 N.C. 623, 190 S.E.2d 471 (1972). There is no evidence that Zaremba had such control over Wackenhut's employees. This assignment of error is overruled.

## THE TREE FACTORY'S APPEAL

[4] As a final matter, we turn to the appeal of third-party defendant-appellant The Tree Factory, which filed a Notice of Appeal in this

action "on the basis of potential *res judicata* effect of the Trial Court's decision on Tree Factory's pursuit of its own action against The Wackenhut Corporation." The Tree Factory brought no claims below, and all claims against it were voluntarily dismissed. Only a "party aggrieved" may appeal from a trial court's order. *See* N.C. Gen. Stat. § 1-271 (1996). A "party aggrieved" is one whose rights have been directly and injuriously affected by the judgment entered in the superior court. *See Culton v. Culton*, 327 N.C. 624, 398 S.E.2d 323 (1990); *Selective Ins. Co. v. Mid-Carolina Insulation Co.*, 126 N.C. App. 217, 484 S.E.2d 443 (1997). Where a party is not aggrieved, his appeal will be dismissed. *See Boone v. Boone*, 27 N.C. App. 153, 218 S.E.2d 221 (1975). The Tree Factory, having brought no claims and having no claims pending against it, is not a party aggrieved. The appeal brought by The Tree Factory is therefore dismissed.

We affirm the trial court's grant of summary judgment in favor of Wackenhut. We dismiss the appeal of The Tree Factory.

Affirmed in part, dismissed in part.

Judges WALKER and McGEE concur.