IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-162

Filed 07 February 2023

Mecklenburg County, No. 19 CVS 16593

JAMES CHANDLER ABBOTT, et al., Plaintiffs,

v.

MICHAEL C. ABERNATHY, et al., Defendants.

Appeal by defendants Rodney and Lynne Worthington from order entered 9 November 2021 by Judge Carla N. Archie in Mecklenburg County Superior Court. Heard in the Court of Appeals 20 September 2022.

*Rosenwood, Rose & Litwak, PLLC, by Erik M. Rosenwood, for plaintiffs-appellees.*

*Arnold & Smith, PLLC, by Paul A. Tharp, for defendants-appellants Rodney and Lynne Worthington.*

ZACHARY, Judge.

Defendants Rodney and Lynne Worthington appeal from the trial court's order denying their motion for summary judgment and granting Plaintiffs' motions for summary judgment and declaratory judgment. After careful review, we affirm.

## I. Background

The parties are residents of Park Crossing, a neighborhood development in Charlotte that borders Little Sugar Creek. Park Crossing was developed in the early 1980s by First Carolina Investors of Mecklenburg, Inc., and it "contains

approximately 605 homes, along with a swim club, tennis facility, and other amenities." The recorded plats associated with Park Crossing show four easements burdening certain properties; the easements were part of "pedestrian walkway systems" intended to "link the development without the necessity of pedestrian activity along the vehicular roadways" to a "floodway fringe area"—"swampy" land adjacent to the neighborhood. In 2000, the developer offered to sell the "floodway fringe area" to Park Crossing's owners' association, which the association declined. In 2001, the developer sold the land to Mecklenburg County. Thereafter, the City of Charlotte began to develop the Little Sugar Creek Greenway, which included the floodplain. The Greenway contains paved access points to various neighborhoods along its route.

The Worthingtons purchased their home in Park Crossing in 1998. The deed to the Worthingtons' property states that the title is subject to "[a]ll enforceable easements, restrictions and conditions of record." Of the four easements depicted in the Park Crossing development plats, one is a ten-foot-wide easement along the border of the Worthingtons' property, five feet of which crosses the Worthingtons' property (the "Easement"). The Easement is depicted on plats recorded at Map Book 20, Page 421 and Map Book 20, Page 499, Mecklenburg County Registry.

Plaintiffs allege that after the City completed the Greenway, Park Crossing residents increasingly used the four easements to access it. As foot traffic grew, some owners of the properties burdened by the easements "began intentionally obstructing

access to the Greenway [pedestrian easements], including erecting and placing obstructions composed of ropes, fencing, and other material designed to interfere with use of the [pedestrian easements] across their property." Some also called the police to report that residents were trespassing on their property when the residents used the easements.

On 23 August 2019, a small group of Park Crossing homeowners filed a complaint in Mecklenburg County Superior Court against the Worthingtons and several other owners of Park Crossing development property burdened by the pedestrian easements. The complainants sought, *inter alia*, a declaratory judgment "in their favor as to the enforceability" of the easements, as well as injunctive relief to prevent the Worthingtons and other defendants "from constructing any further obstacles, traps, obstructions, fences, and the like" restricting access to the easements.

On 18 December 2019, some of the original defendants filed a motion to dismiss pursuant to Rule 12(b)(7) of the North Carolina Rules of Civil Procedure, arguing that the original plaintiffs had failed to add all necessary parties to this action by neglecting to include all homeowners in Park Crossing as parties. The trial court entered an order on 4 February 2020 in which it concluded that "all record owners of lots within Park Crossing are 'necessary parties' to this litigation pursuant to Rule 19 of the North Carolina Rules of Civil Procedure." The court stayed the action and granted the original plaintiffs leave to amend their complaint to join the necessary

parties.

The original plaintiffs then sent each Park Crossing homeowner a package that included a copy of the trial court's order, a letter from the original plaintiffs' counsel, and a "Lot Owner Preference Form." The Lot Owner Preference Form allowed each owner to choose to take part in the action either as a plaintiff, a defendant, or a non-participating defendant (a "default defendant"). Those who chose not to participate in the litigation were served with a copy of the lawsuit and named as default defendants. Approximately 350 Park Crossing owners chose to participate as plaintiffs, while roughly 470 others were joined as default defendants in the suit. None of the owners chose to join the action as defendants.

On 8 June 2020, the original and newly added plaintiffs (collectively, "Plaintiffs") filed an amended complaint. In the amended complaint, Plaintiffs sought a declaratory judgment establishing the rights of all Park Crossing residents to use the easements; Plaintiffs also requested injunctive relief preventing the defendants from "interfer[ing] with the use and enjoyment of the" easements. On 17 August 2020, the defendants filed an answer and raised several affirmative defenses.

On 17 November 2020, Plaintiffs filed a motion for summary judgment, and on 29 March 2021, filed an amended motion for summary judgment. A small group of defendants, including the Worthingtons, filed a cross-motion for summary judgment "as to all causes of action" alleged in Plaintiffs' amended complaint on 29 March 2021.

On 8 July 2021, Plaintiffs filed motions for entry of default and judgment by

default against the default defendants. On 8 September 2021, the trial court granted Plaintiffs' motions, concluding that the four pedestrian easements were valid and "for the benefit of each resident of Park Crossing[.]"

The parties' summary judgment motions came on for hearing on 31 August 2021 in Mecklenburg County Superior Court. By the time of the hearing, Plaintiffs had "reached settlements with everybody except the Defendants Worthington." The hearing proceeded, with the Worthingtons contending that the Easement terminated as a matter of law once Mecklenburg County purchased the land to which the Easement leads, as the Easement "has now become a public way" without the Worthingtons' consent. The Worthingtons also asserted that Plaintiffs lacked standing to bring this action, and maintained that the Easement was abandoned. Finally, the Worthingtons argued before the trial court that Plaintiffs' requested use of the Easement constituted overburdening. Plaintiffs contended that the Easement was valid, not abandoned, and for the benefit of all Park Crossing residents.

On 9 November 2021, the trial court entered an order granting declaratory judgment and summary judgment in favor of Plaintiffs, and denying the Worthingtons' motion for summary judgment. The court found that "[t]he express language and clear depictions in the Park Crossing maps and plats . . . recorded by the [d]eveloper dedicate the [pedestrian easements] as appurtenant easements to and for the benefit of each resident of Park Crossing." The court ordered that the Worthingtons remove any obstructions to the Easement and refrain from restricting

residents' access to the Easement in the future.

The Worthingtons timely appealed the trial court's order.

## II. Appellate Jurisdiction

As a preliminary matter, we address this Court's jurisdiction to review the Worthingtons' appeal of the trial court's order granting Plaintiffs' motions for summary judgment and declaratory judgment, and denying the Worthingtons' motion for summary judgment.

Generally, this Court only hears appeals from final judgments. *See* N.C. Gen. Stat. § 7A-27(b)(1)–(2) (2021). "A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." *Veazey v. City of Durham*, 231 N.C. 357, 361–62, 57 S.E.2d 377, 381, *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). By contrast, "[a]n interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Id.* at 362, 57 S.E.2d at 381. With few exceptions, "no appeal lies to an appellate court from an interlocutory order or ruling of the trial judge[.]" *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 437, 206 S.E.2d 178, 181 (1974). "A grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal." *Curl v. Am. Multimedia, Inc.*, 187 N.C. App. 649, 652, 654 S.E.2d 76, 78–79 (2007) (citation omitted), *petition for disc. review withdrawn*, 362 N.C. 470, 665 S.E.2d 741

(2008).

Although the trial court's order in the instant case involved only the Worthingtons as defendants, to the exclusion of the suit's numerous other defendants, the order on appeal nevertheless constitutes a final judgment in the matter. When the parties' motions came on for hearing, the Worthingtons were the only non-default defendants with whom Plaintiffs had not entered into a settlement agreement. Shortly after the motions hearing, the trial court entered default and granted default judgment against the default defendants. Hence, Plaintiffs and the Worthingtons were the sole remaining parties when the trial court entered the order from which the Worthingtons appeal. Furthermore, the court granted Plaintiffs' motion for declaratory judgment and granted summary judgment in favor of Plaintiffs on all of their claims. As such, the trial court's order "dispose[d] of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." *Veazey*, 231 N.C. at 361–62, 57 S.E.2d at 381. Accordingly, we conclude that this Court has jurisdiction over this matter.

### III.  Preservation of Issues

The Worthingtons advance several arguments on appeal challenging the trial court's order. They argue that the trial court erred by granting Plaintiffs' motion for summary judgment because (1) Plaintiffs lacked standing to enforce the Easement; (2) Plaintiffs abandoned the Easement; (3) Plaintiffs' proposed use of the Easement constitutes overburdening and misuse; (4) the Worthingtons have not dedicated their

lands for public use; (5) the doctrine of laches barred Plaintiffs' action; (6) adverse possession and the statute of limitations barred Plaintiffs' claims; (7) the Marketable Title Act extinguished Plaintiffs' claims; (8) the grant of the Easement was void because it lacked a description of the dominant estate; (9) the material issue of the physical location of the Easement precluded summary judgment; and (10) Plaintiffs' proposals are inconsistent with the grantor's intent. However, the Worthingtons failed to preserve several of these arguments for appellate review.

"Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." N.C.R. App. P. 28(b)(6); *see, e.g.*, *K2HN Constr. NC, LLC v. Five D Contr'rs, Inc.*, 267 N.C. App. 207, 213, 832 S.E.2d 559, 564 (2019) (determining that the plaintiff abandoned issues on appeal from summary judgment where it failed to establish "(1) what the elements of [its] claims are; or (2) how the evidence demonstrates the existence of any genuine issue of material fact"); *Premier Plastic Surgery Ctr., PLLC v. Bd. of Adjust. for Town of Matthews*, 213 N.C. App. 364, 368, 713 S.E.2d 511, 514 (2011) (concluding that the appellants "abandoned [an] issue by failing to provide any reason or argument in support of their assertion"); *Dillingham v. Dillingham*, 202 N.C. App. 196, 203, 688 S.E.2d 499, 508 (2010) ("Though [the] respondent cites this Court to the legal definition of the equitable defense of laches in his brief, he fails to provide any argument as to why this defense should apply to the present case. Thus, his assignment of error . . . is deemed abandoned."); *Williams v. HomEq Servicing Corp.*,

184 N.C. App. 413, 420, 646 S.E.2d 381, 385 (2007) (concluding that six of the plaintiff's arguments pursuant to nine sections of the pertinent statutes were "deemed abandoned pursuant to N.C.R. App. P. 28(b)(6)" where he "only specifically argue[d] in his brief" three sections), *appeal withdrawn*, 362 N.C. 374, 662 S.E.2d 552 (2008).

In addition, "where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts." *Piraino Bros., LLC v. Atl. Fin. Grp., Inc.*, 211 N.C. App. 343, 348, 712 S.E.2d 328, 332 (citation and internal quotation marks omitted) (concluding that the plaintiffs could not rely upon a theory on appeal that was not raised in the trial court where the plaintiffs sought reversal of summary judgment), *disc. review denied*, 365 N.C. 357, 718 S.E.2d 391 (2011). The principle articulated in *Piraino*—that a party may not rely upon a different theory on appeal than the one presented to the trial court—is well established. *See, e.g.*, *Cobb v. Pa. Life Ins. Co.*, 215 N.C. App. 268, 280, 715 S.E.2d 541, 551 (2011) ("[The plaintiff's] argument on section 58-63-15(11)(n) was not presented to the trial court, and [he] is barred from raising a new theory on appeal to defeat summary judgment."); *Frank v. Funkhouser*, 169 N.C. App. 108, 114, 609 S.E.2d 788, 793 (2005) (declining to review the plaintiff's argument that summary judgment should be reversed based on a theory not included in the complaint and not argued to the trial court in opposing summary judgment); *Holroyd v. Montgomery Cty.*, 167 N.C. App. 539, 546, 606 S.E.2d

353, 358 (2004) (concluding that "[f]ailure to plead or argue a theory of recovery before the trial court precludes the assertion of that theory on appeal" where the plaintiff sought reversal of summary judgment based on a theory not included in the complaint (citation omitted)), *disc. review and cert. denied*, 359 N.C. 631, 613 S.E.2d 690 (2005); *Hoisington v. ZT-Winston-Salem Assocs.*, 133 N.C. App. 485, 490, 516 S.E.2d 176, 180 (1999) (concluding that a party "is not permitted on appeal to advance new theories or raise new issues in support of [its] opposition to the [summary judgment] motion"), *disc. review and cert. improvidently allowed*, 351 N.C. 342, 525 S.E.2d 173 (2000).

This principle is also incorporated in Rule 10 of the Appellate Rules, which provides that "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(a)(1). Importantly, the complaining party must also "obtain a ruling upon [its] request, objection, or motion" from the trial court. *Id.* Our Supreme Court explained the rationale behind this Rule:

> The requirement expressed in Rule 10[(a)(1)] that litigants raise an issue in the trial court before presenting it on appeal goes to the heart of the common law tradition and [our] adversary system. This Court has repeatedly emphasized that Rule 10[(a)(1)] prevent[s] unnecessary new trials caused by errors that the trial court could have corrected if brought to its attention at the proper time. Rule 10 thus plays an integral role in preserving the efficacy and integrity of the appellate process.
>
> We have stressed that Rule 10[(a)](1) is not simply a

> technical rule of procedure but shelters the trial judge from
> an undue if not impossible burden.

*Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 195, 657 S.E.2d 361, 363 (2008) (citations and internal quotation marks omitted).

Here, the Worthingtons properly preserved their arguments regarding standing, abandonment, overburdening and misuse, and public use. However, for the reasons explained below, we conclude that they have not sufficiently preserved the remaining arguments for appellate review.

First, although the Worthingtons asserted the affirmative defense of laches in their answer, they have abandoned any argument on appeal concerning this issue by failing to argue the prejudice element of the claim. To successfully assert the affirmative defense of laches, a defendant must establish that (1) "a delay of time has resulted in some change in the condition of the property or in the relations of the parties"; (2) the delay is "unreasonable and must have worked to the disadvantage, injury or prejudice of the person seeking to invoke the doctrine of laches"; and (3) "the claimant knew of the existence of the grounds for the claim." *Johnson v. N.C. Dep't of Cultural Res.*, 223 N.C. App. 47, 55, 735 S.E.2d 595, 600 (2012) (citation omitted), *disc. review denied*, 366 N.C. 566, 738 S.E.2d 377 (2013). "The 'prejudice element' of the laches doctrine refers to whether a defendant has been prejudiced in its ability to defend against the plaintiff's claims by the plaintiff's delay in filing suit." *Id.* at 56, 735 S.E.2d at 601 (citation omitted). On appeal, the Worthingtons assert that "[t]he

prejudice Defendants will suffer is manifest. They stand to lose their privacy, the quiet and peaceful enjoyment of their land, and their property value." To the extent that the Worthingtons advance the doctrine of laches on appeal, they have stated no reason or argument in support of the prejudice element for that issue in their brief. Accordingly, this issue is abandoned. *See* N.C.R. App. P. 28(b)(6); *see also, e.g., Wilson v. Pershing, LLC*, 253 N.C. App. 643, 650, 801 S.E.2d 150, 156 (2017) (concluding that where an appellant's brief "does not contain any substantive arguments on [an issue presented], this issue has been abandoned").

The Worthingtons have similarly abandoned their argument that Plaintiffs' claims are barred by adverse possession and the statute of limitations. In support of this issue, the Worthingtons contend in their appellate brief: "Plaintiffs' claims are subject to the twenty-year statute of limitations provided in N.C. Gen. Stat. § 1-40. Plaintiffs' failure to bring a claim regarding their purported rights respecting the easements within a twenty-year period following actual or constructive notice of their claims (35-40 years ago) precludes this action." However, the Worthingtons fail to cite any case law in support of this claim. "It is not the duty of this Court to supplement an appellant's brief with legal authority or arguments not contained therein. Th[is argument is] deemed abandoned by virtue of N.C.R. App. P. 28(b)(6)." *Lasecki v. Lasecki*, 257 N.C. App. 24, 47, 809 S.E.2d 296, 312 (2017) (citation omitted); *see* N.C.R. App. P. 28(b)(6).

Furthermore, the Worthingtons have failed to preserve their argument that

the Marketable Title Act extinguished Plaintiffs' claims. The Worthingtons did not raise any argument concerning the Marketable Title Act below, and thus never obtained the requisite ruling from the trial court. *See* N.C.R. App. P. 10(a)(1). Nor did they argue the affirmative defense of lack of a dominant estate before the trial court. In that "the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts" when "a theory argued on appeal was not raised before the trial court," *Piraino*, 211 N.C. App. at 348, 712 S.E.2d at 332 (citation and internal quotation marks omitted), the Worthingtons are prohibited from now asserting these arguments on appeal.

Likewise, the Worthingtons' argument regarding the "material issue" of the Easement's location is unpreserved: the Worthingtons did not dispute the location of the Easement before the trial court, and a party "cannot create an issue of material fact for summary judgment by raising it for the first time on appeal." *Bryant v. Wake Forest Univ. Baptist Med. Ctr.*, 281 N.C. App. 630, 635 n.1, 870 S.E.2d 269, 273 n.1, *disc. review denied*, 382 N.C. 326, 876 S.E.2d 279 (2022).

Finally, the Worthingtons waived appellate review of their argument regarding the grantor's intent. At the hearing on the summary judgment motions, the Worthingtons' counsel explicitly disclaimed any argument regarding grantor's intent: "First and foremost, the most important thing to get across is that we're not contending that this is an intent issue. . . . [W]e contend that based on the plain language of the plat and -- and the language contained in the record, that this is not

an intent issue." By expressing to the trial court that they were *not* arguing grantor's intent as a basis for their motion for summary judgment, the Worthingtons waived their opportunity to obtain a ruling from the court on this ground. Therefore, they have not preserved this issue for review. *See* N.C.R. App. P. 10(a)(1).

We now examine the merits of the Worthingtons' remaining, preserved arguments.

## IV. Discussion

The Worthingtons assert that the trial court's grant of summary judgment in favor of Plaintiffs was improper because (1) Plaintiffs lacked standing to bring this action, (2) Plaintiffs abandoned the Easement, (3) Plaintiffs' desired use of the Easement constitutes overburdening and misuse, and (4) the Worthingtons have not dedicated their lands for public use.

*A. Standard of Review*

A trial court properly grants summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation omitted).

"The party moving for summary judgment bears the burden of establishing

that there is no triable issue of material fact." *Badin Shores Resort Owners Ass'n v. Handy Sanitary Dist.*, 257 N.C. App. 542, 549, 811 S.E.2d 198, 204 (2018) (citation omitted). The moving party may meet this burden "by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim." *Id.* (citation omitted).

Once the moving party makes the requisite showing, "the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating that the nonmoving party will be able to make out at least a prima facie case at trial[.]" *Cummings v. Carroll*, 379 N.C. 347, 358, 866 S.E.2d 675, 684–85 (2021) (citation and internal quotation marks omitted). "[T]he non-moving party must forecast sufficient evidence to show the existence of a genuine issue of material fact in order to preclude an award of summary judgment." *Badin Shores*, 257 N.C. App. at 550, 811 S.E.2d at 204 (citation omitted).

"If the trial court grants summary judgment, the decision should be affirmed on appeal if there is any ground to support the decision." *Proffitt v. Gosnell*, 257 N.C. App. 148, 151, 809 S.E.2d 200, 204 (2017) (citation omitted). Appellate courts review "decisions arising from trial court orders granting or denying motions for summary judgment using a de novo standard of review." *Cummings*, 379 N.C. at 358, 866 S.E.2d at 684. "When reviewing de novo, the court considers the matter anew and

freely substitutes its own judgment for that of the lower tribunal." *Asher v. Huneycutt*, 284 N.C. App. 583, 588, 876 S.E.2d 660, 666 (2022) (citation and internal quotation marks omitted).

*B. Plaintiffs' Standing*

The Worthingtons assert that Plaintiffs lacked standing to initiate this action because they did not "reside on any parcels adjoining the easements at issue," thereby divesting them of "any ownership interest in any parcel containing any of the easements at issue," as well as "any ownership interest in the floodplain lands" adjoining the Park Crossing development, to which the Easement leads. We disagree.

"An appurtenant easement is an easement created for the purpose of benefitting particular land. This easement attaches to, passes with and is an incident of ownership of the particular land." *Nelms v. Davis*, 179 N.C. App. 206, 209, 632 S.E.2d 823, 825–26 (2006) (citations and internal quotation marks omitted). Our Supreme Court has explained that lot owners have certain rights to streets, parks, and playgrounds as appurtenant easements in the subdivision where they reside:

> Where lots are sold and conveyed by reference to a map or plat which represents a division of a tract of land into streets, lots, parks and playgrounds, a purchaser of a lot or lots acquires the right to have the streets, parks and playgrounds kept open for his reasonable use, and this right is not subject to revocation except by agreement. It is said that such streets, parks and playgrounds are *dedicated* to the use of lot owners in the development. In a strict sense it is not a dedication, for a dedication must be made to the public and not to a part of the public. *It is a right in the nature of an easement appurtenant.* Whether it

> be called an easement or a dedication, *the right of the lot owners to the use of the streets, parks and playgrounds may not be extinguished, altered or diminished except by agreement or estoppel.* This is true because the existence of the right was an inducement to and a part of the consideration for the purchase of the lots.

*Cleveland Realty Co. v. Hobbs*, 261 N.C. 414, 421, 135 S.E.2d 30, 35–36 (1964) (citations omitted) (second and third emphases added); *see also Connolly v. Robertson*, 151 N.C. App. 613, 616–17, 567 S.E.2d 193, 196–97 (2002).

Here, because the Easement at issue is an appurtenant easement, Plaintiffs had standing to bring this action to enforce their rights to use it. The developer of Park Crossing dedicated the Easement as part of a network of paths designed to "link the development without the necessity of pedestrian activity along the vehicular roadways." As such, the Easement was "dedicated to the use of lot owners in the development[,]" creating "a right in the nature of an easement appurtenant" for all who live there. *Hobbs*, 261 N.C. at 421, 135 S.E.2d at 36 (emphasis omitted). Moreover, as our Supreme Court established in *Hobbs*, the right of the lot owners to the use of appurtenant easements within a community "may not be extinguished, altered or diminished except by agreement or estoppel." *Id.* No such agreement exists here; in fact, the Declaration of Covenants, Conditions, and Restrictions for Park Crossing expressly provides that "[t]he Association, *or any Owner*, shall have the right to enforce . . . all restrictions, conditions, covenants, reservations, liens and charges now or hereafter imposed by the provisions of this Declaration." (Emphasis

added).

In that the Park Crossing developer dedicated the Easement for the use of lot owners as part of a larger footpath network throughout the neighborhood, Plaintiffs had standing to enforce their rights to the use of the Easement as an appurtenant easement. *See id.* The Worthingtons' argument accordingly fails.

### C. *Abandonment of Easement*

The Worthingtons next argue that "[i]f Plaintiffs possessed any rights respecting Defendants' properties, they abandoned them long before this action." They assert that "Plaintiffs showed a clear intention to abandon and terminate the easements" by seeking to convert them "into vehicles of ingress and egress for users of the public greenway[,]" which the Worthingtons contend "pervert[ed] the original nature and purpose of the easements." This argument lacks merit.

"An easement may be abandoned by unequivocable acts showing a clear intention to abandon and terminate the right . . . ." *Combs v. Brickhouse*, 201 N.C. 366, 369, 160 S.E. 355, 356 (1931). "The essential acts of abandonment are the intent to abandon and the unequivocal external act by the owner of the dominant tenement by which the intention is carried to effect." *Skvarla v. Park*, 62 N.C. App. 482, 487, 303 S.E.2d 354, 357 (1983). "Mere lapse of time in asserting one's claim to an easement, unaccompanied by acts and conduct inconsistent with one's rights, does not constitute waiver or abandonment of the easement." *Id.* (concluding that the plaintiffs did not abandon an easement after 70 years of nonuse because there was

"no evidence of any external unequivocal act by [the] plaintiffs, or their predecessors in title, indicating an intent to abandon the easement").

In the present case, the Worthingtons contend that because the Park Crossing owners' association declined to purchase the floodplain from the developer, "[t]he community abandoned the plan, the land, and the [four] easements." A review of the record, however, belies this contention. Assuming, *arguendo*, that the association's refusal evinced an intention to abandon the Easement, the Worthingtons nevertheless must present evidence of Plaintiffs' "unequivocal external act" in furtherance of this intention, *id.*, which they have failed to do. In that "[m]ere lapse of time in asserting one's claim to an easement, unaccompanied by acts and conduct inconsistent with one's rights, does not constitute waiver or abandonment of the easement[,]" *id.*, the Worthingtons failed to "forecast sufficient evidence to show the existence of a genuine issue of material fact in order to preclude an award of summary judgment[,]" *Badin Shores*, 257 N.C. App. at 550, 811 S.E.2d at 204 (citation omitted).

Therefore, the trial court properly granted summary judgment in favor of Plaintiffs regarding the issue of abandonment.

*D. Overburdening and Misuse of Easement*

The Worthingtons also argue that Plaintiffs' proposed use of the Easement constitutes overburdening and misuse, as it "allows for access to other properties not included in the [E]asement and allows for usage of a kind not contemplated in the grants." This argument is unavailing.

"If an easement is granted, the user of the easement may neither change the easement's purpose nor expand the easement's dimensions." *Bunn Lake Prop. Owner's Ass'n v. Setzer*, 149 N.C. App. 289, 296, 560 S.E.2d 576, 581 (2002); *see also, e.g.*, *Moore v. Leveris*, 128 N.C. App. 276, 281, 495 S.E.2d 153, 156 (1998) (concluding that an easement to use a public neighborhood road did not allow the defendant to place a sewer line under the road); *Swaim v. Simpson*, 120 N.C. App. 863, 864–65, 463 S.E.2d 785, 787 (1995) (concluding that the installation of utility pipes on an easement went beyond the easement's intended use of ingress and egress), *aff'd per curiam*, 343 N.C. 298, 469 S.E.2d 553 (1996).

To determine whether a particular act constitutes overburdening or misuse of an easement, this Court applies the following rules:

> First, the scope of an express easement is controlled by the terms of the conveyance if the conveyance is precise as to this issue. Second, if the conveyance speaks to the scope of the easement in less than precise terms (i.e., it is ambiguous), the scope may be determined by reference to the attendant circumstances, the situation of the parties, and by the acts of the parties in the use of the easement immediately following the grant. Third, if the conveyance is silent as to the scope of the easement, extrinsic evidence is inadmissible as to the scope or extent of the easement. However, in this latter situation, a reasonable use is implied.

*City of Charlotte v. BMJ of Charlotte, LLC*, 196 N.C. App. 1, 17, 675 S.E.2d 59, 69 (2009) (citation omitted), *disc. review denied*, 363 N.C. 800, 690 S.E.2d 533 (2010).

In the case at bar, the plats detailing the Easement label it as a ten-foot-wide pedestrian easement that runs southwest along the property line of the Worthington's property, following the property line to the end of the lot. As the trial court determined, "[t]he express language and clear depictions in the Park Crossing maps and plats . . . recorded by the [d]eveloper" demonstrate a dedication of the Easement to and for the benefit of each resident of Park Crossing as a pedestrian path. In their amended complaint, Plaintiffs requested a declaratory judgment to establish their right "to access, use, and enjoy the [Easement], including for the purpose of accessing the Little Sugar Creek Greenway[.]" Unlike the challenged use in *Swaim*, Plaintiffs' proposed use of the Easement stays within its original intended scope of pedestrian ingress and egress; the fact that the Easement now leads to a developed Greenway, rather than merely an undeveloped floodplain, is immaterial, as it does not change the purpose for which Plaintiffs seek to use the Easement. *See Swaim*, 120 N.C. App. at 864–65, 463 S.E.2d at 787.

Plaintiffs' proposed use of the Easement as a footpath for Park Crossing residents to access the Greenway falls squarely within the Easement's scope as a pedestrian walkway, and the Worthingtons failed to meet their burden "to produce a forecast of evidence demonstrating that [they] will be able to make out at least a prima facie case at trial" concerning overburdening and misuse of the Easement. *Cummings*, 379 N.C. at 358, 866 S.E.2d at 684–85 (citation and internal quotation

marks omitted). We therefore conclude that the trial court did not err in granting summary judgment in favor of Plaintiffs on this claim.

*E. Dedication of Land for Public Use*

Lastly, the Worthingtons contend that "Plaintiffs are forcing a public dedication of [the Worthingtons'] land, over [the Worthingtons'] objections and despite the lack of any dedication or developer-grantor intention that the [E]asement be open to the public." The Worthingtons further maintain that "[b]ecause an offer of public dedication must be shown by 'clear and unmistakable' intent, and no such unambiguous intention is present on the face of the plat," the trial court erred in entering summary judgment in favor of Plaintiffs. This argument is unpersuasive.

"A private right-of-way or street may become a public street by one of three methods: (1) in regular proceedings before a proper tribunal; (2) by prescription; or (3) through action by the owner, such as a dedication, gift, or sale." *Wright v. Town of Matthews*, 177 N.C. App. 1, 10, 627 S.E.2d 650, 658 (2006) (citation omitted). "[A] dedication must be made to the public, and not to part of the public nor to private owners of particular land." *Tower Dev. Partners v. Zell*, 120 N.C. App. 136, 143–44, 461 S.E.2d 17, 22 (1995), *appeal dismissed*, 342 N.C. 897, 471 S.E.2d 64 (1996). "Because North Carolina does not have statutory guidelines for dedicating streets to the public, the common law principles of offer and acceptance apply." *Id.* at 140, 461 S.E.2d at 20. Accordingly, a "dedication of property to the public consists of two steps: (1) an offer of dedication, and (2) an acceptance of this offer by a proper public

authority." *Dep't of Transp. v. Elm Land Co.*, 163 N.C. App. 257, 265, 593 S.E.2d 131, 137, *disc. review denied*, 358 N.C. 542, 599 S.E.2d 42 (2004) (citation omitted).

"The evidence in support of the intent of an owner to dedicate an easement should be clear and unmistakable." *Wright*, 177 N.C. App. at 11, 627 S.E.2d at 658 (citation and internal quotation marks omitted). "In easements, as in deeds generally, the intention of the parties is determined by a fair interpretation of the grant." *Borders v. Yarbrough*, 237 N.C. 540, 542, 75 S.E.2d 541, 543 (1953) (citation omitted). "An offer of dedication may also be implied through conduct of the owner manifesting an intent to set aside land for the public." *Wright*, 177 N.C. App. at 13, 627 S.E.2d at 660 (citation and internal quotation marks omitted). "When proving implied dedication, where no actual intent to dedicate is shown, the manifestation of implied intent to dedicate must clearly appear by acts which to a reasonable person would appear inconsistent and irreconcilable with any construction except dedication of the property to public use." *Dep't of Transp. v. Kivett*, 74 N.C. App. 509, 513, 328 S.E.2d 776, 779 (1985).

"Furthermore, a dedication is not valid until the offer to dedicate is accepted by the responsible public authority." *Tower*, 120 N.C. App. at 144, 461 S.E.2d at 22. "A dedication without acceptance is merely a revocable offer[,]" and acceptance "cannot be established by permissive use." *Oliver v. Ernul*, 277 N.C. 591, 598, 178 S.E.2d 393, 396 (1971).

In the instant case, the Worthingtons argue that Plaintiffs seek to open the Easement to the public because the Easement now connects to the Greenway, an area owned by the government and open to the public. Such action, the Worthingtons argue, is improper because the Worthingtons never consented to a public dedication. While it is true that the Worthingtons did not consent to dedicate the Easement to the public and that an easement cannot "be converted into a public way without the consent of the owner of the servient estate[,]" *Wood v. Woodley*, 160 N.C. 17, 20, 75 S.E. 719, 720 (1912), the Worthingtons' claim nevertheless misses the mark. Plaintiffs actively disclaimed any intention of offering the Easement to the public, accurately asserting below that although the Easement "leads from a public street in the neighborhood to some land that is owned by the county, it would be trespassing for anybody to use it who is not a member of Park Crossing[.]" Plaintiffs similarly state on appeal that the Easement "is not a public easement." Moreover, even assuming that Plaintiffs intended that the Easement be dedicated to the public, the Worthingtons' claim fails, as neither party presented any evidence of acceptance by a public authority. *See Oliver*, 277 N.C. at 598, 178 S.E.2d at 396.

In that a "dedication without acceptance is merely a revocable offer" and acceptance "cannot be established by permissive use[,]" *id.*, the Easement was not dedicated to the public without the Worthingtons' consent. Thus, the trial court did not err in granting summary judgment on this claim in favor of Plaintiffs.

## V.  Conclusion

For the foregoing reasons, we conclude that that the trial court properly granted Plaintiffs' motions for summary judgment and declaratory judgment, and denied the Worthingtons' motion for summary judgment. Accordingly, we affirm the court's order.

AFFIRMED.

Chief Judge STROUD and Judge MURPHY concur.